UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

AKRAM MARSEET,

                        Plaintiff,

      v.

ROCHESTER INSTITUTE OF
TECHNOLOGY, et al.,

                     Defendants.

_____

DECISION & ORDER

20-CV-7096FPG

## PRELIMINARY STATEMENT

Currently pending before this Court are numerous motions[1] filed by plaintiff Akram Marseet ("Marseet") and defendant Rochester Institute of Technology ("RIT") relating to depositions Marseet desires to take in connection with this litigation.  (Docket ## 32, 40, 41, 42, 45, 54, 98, 106, 112, 113, 138).  By Orders dated July 15, 2022, and July 22, 2022, this Court reserved on several of the pending motions, determined that a court-supervised deposition was appropriate, and scheduled the supervised deposition of Tony Yazback.  (Docket ## 111, 117). The deposition of Yazback was completed by video on September 7, 2022, and, by Order dated September 14, 2022, the Court directed the parties to file supplemental submissions.  (Docket # 127).  On October 19, 2022, RIT filed its supplemental submission.  (Docket # 128).  After receiving multiple extensions (Docket ## 132, 141, 150), on January 24, 2023, Marseet filed his

---

[1] Several other motions, which are not addressed herein, remain pending before the Court.  (Docket ## 37, 39, 52, 60, 74, 83, 123, 129, 135, 137).

supplemental submission (Docket # 152).[2]  Also pending is RIT's motion to seal (Docket # 44) and Marseet's motions for disqualification of the undersigned, for an order regarding RIT's and its counsel's conduct, and for an order identifying the legal bases for the Court's prior Orders (Docket ## 101, 139, 140).

## I.  <u>Motion to Seal</u>

On April 25, 2022, RIT moved to seal certain documents that were subject to a protective order entered in this matter (Docket ## 20, 44) and that were submitted in connection with its cross-motion for a protective order filed that same day (Docket # 45).  Specifically, RIT has requested to file under seal unredacted versions of its memoranda of law (Docket # 45-3), the declaration of Hinna Upal (Docket # 45-1), and exhibits A through I attached to the declaration (Docket # 45-2).  (Docket # 44-1 at ¶ 9).  RIT represents that the documents they seek to file under seal have either been marked, or discuss material that has been marked, as "Confidential Information" in accordance with ¶ 3(d) of the protective order or contain information protected from disclosure pursuant to the Family Educational Rights Privacy Act ("FERPA").  (Docket # 45-1 at ¶¶ 8, 10-12).  Marseet filed an opposition to the motion, although his submission indicates that he does not oppose the sealing of the documents identified by RIT.  (Docket # 49 at 13 ("[p]laintiff does not object [to] the [d]efendant's [m]otion to seal certain or all documents").  Rather, he disagrees with some of the statements made by RIT in support of its motion, contends that RIT has violated FERPA in connection with Marseet's personal information, and maintains that RIT should be required to remove all redactions from the

---

[2]  It appears that Marseet violated the form requirements of this Court's local rules in an attempt to circumvent the page limits ordered by the Court.  (Docket ## 150, 152).  Specifically, Rule 10 of the Local Rules of Civil Procedure for the Western District of New York requires submissions to contain at least 12-point font, double-spacing between text lines, and one-inch margins on every side.  *See* W.D.N.Y. Loc. R. Civ. P. 10.  Marseet is cautioned that the Court will strike any future filings that fail to comply with the form requirements of the local rules.

documents it has produced to him in this litigation (an issue raised by Marseet in connection with other currently pending motions not addressed herein).  (Docket # 49).  The Court finds that good cause has been established to justify the requested sealing.  (Docket ## 20, 44).  Accordingly, the motion to seal (Docket # 44) is granted.

## II.   Deposition Motions

### A.   Factual Background

Marseet's request to conduct depositions in this matter has resulted in an extraordinary number of filings and substantial intervention by the Court.  (*See*, *e.g.*, Docket ## 32, 40, 41, 42, 44, 45, 48, 50, 51, 54, 58, 69, 70, 77, 98, 102, 106, 111, 112, 113, 117, 127, 128, 128-4, 138, 146, 152, 155).  The Court has reviewed the many filings, all of which involve the same primary dispute – the number of depositions Marseet may take and the manner in which they may be conducted.  (Docket ## 32, 40, 41, 42, 45, 48, 50, 51, 54, 58, 69, 70, 77, 98, 102, 106, 112, 113, 128, 152).  Marseet has also filed a motion requesting that RIT's counsel, Hinna Upal, Esq., be precluded from attending future depositions.  (Docket # 138).

Plaintiff, originally represented by counsel, commenced this action on December 17, 2020.  (Docket # 1).  In his complaint, Marseet alleges RIT discriminated and retaliated against him based upon his race, ethnicity, disability, and national origin, in violation of federal and state law.  (*Id.*).  Marseet alleges that he is from Libya and came to the United States on a student visa.  (*Id.* at ¶ 9).  In August 2015, Marseet enrolled at RIT in a graduate program in electrical engineering.  (*Id.* at ¶ 10).  While enrolled at the university, RIT hired him as a student employee.  (*Id.* at ¶¶ 12-13).

Marseet alleges that his supervisor treated him differently due to his race and national origin, including by offering him less desirable assignments and compensating him at a lower rate than his peers. (*Id.* at ¶¶ 13-14). According to Marseet, when another student made false allegations against him, RIT conducted a campus disciplinary proceeding against him. (*Id.* at ¶ 15). Marseet alleges that both the allegations and RIT's decision to proceed with the disciplinary proceeding were based upon his national origin. (*Id.*).

Marseet maintains that during the disciplinary process, he informed RIT's representatives and employees that he suffered from a medically-diagnosed disability and that he required assistance to defend himself. (*Id.* at ¶ 18). Marseet maintains that RIT failed to provide the required accommodation for his disability and conducted the proceedings without providing him effective assistance. (*Id.*). At the conclusion of the disciplinary proceedings, Marseet was expelled from the university. (*Id.* at ¶ 19).

In addition to those purported discriminatory acts, Marseet also maintains that RIT retaliated against him after he complained about disparate treatment. (*Id.* at ¶ 24). According to Marseet, RIT's retaliatory actions included denying him due process and an effective advocate during the disciplinary process, expelling him from the university based upon false accusations, entering derogatory and inaccurate information into his academic and personnel files, communicating with federal immigration officials in an effort to have him deported, and disclosing derogatory and inaccurate information to other colleges and universities in an attempt to prevent him from obtaining a doctoral degree. (*Id.*).

Following a deterioration in their relationship, plaintiff's counsel withdrew from representation on March 11, 2022. (Docket ## 27, 30). Shortly thereafter, by letter dated April 12, 2022, counsel for RIT requested a conference with the Court to address conduct by Marseet

that counsel characterized as "offensive and threatening."  Specifically, counsel for RIT represented that Marseet referred to both counsel and to RIT as "terrorists" on multiple occasions.  This Court conducted a conference on April 14, 2022.  During the conference, this Court admonished Marseet that litigants are required to be courteous and civil to each other and specifically directed him to refrain from using inappropriate, inflammatory, or abusive language towards RIT and its counsel.  The Court warned Marseet against referring to opposing counsel or the defendants as "liars," "killers," or "terrorists."  (*See*, *e.g.*, Docket # 77 at 6).  Despite the Court's admonishments, Marseet continued to file motions and letters and send communications replete with abusive and inappropriate language.  (*See generally* Docket ## 48, 50, 51).

Due to Marseet's request to depose a substantial number of witnesses, the Court determined that a supervised deposition was warranted based upon RIT's expressed concerns over Marseet's "inappropriate and abusive comments and personal attacks" directed towards RIT, potential witnesses, defendant's counsel, and this Court.  (Docket # 111 at 3).  In its order authorizing the supervised deposition, the Court identified examples of "abusive and inappropriate" language used by Marseet.  (*Id.* at 2).  Specifically, the Court stated:

> Examples include accusing RIT and its counsel of lacking honesty, "hunting in the dirty water," lying, cheating, engaging in malicious and unprofessional behavior, and attempting to assassinate Marseet or end his life.  (*See generally* Docket ## 48, 50, 51).  Marseet also questioned how defendant's counsel obtained her degree to practice law and suggested that she should return to law school after she first "stud[ies] morals."  (Docket # 50 at 23, 25).  He also has referred to witnesses whom he desires to depose as being "cheap," "dirty," "filthy," and lacking in morals, and accused them of being "liar[s]," "slave[s]," "adulter[ers]," and "criminal[s]." (*See generally* Docket ## 48, 50, 51).

(*Id.*).

While acknowledging that litigation may be stressful and frustrating, particularly for *pro se* litigants, the Court admonished Marseet that the language it had identified, and any other like it, was "simply . . . not permitted." (*Id.* at 3). The Court further advised Marseet that, as a litigant, he was bound to follow "basic rules of ethics and civility" and directed him to "immediately cease from making inappropriate and abusive comments and personal attacks to and about RIT, potential witnesses, defendant's counsel, and this Court in his filings and communications." (*Id.*). The Court further warned him that "**[f]ailure to abide by this Order may result in the imposition of sanctions, which may include the striking of any noncompliant submissions, the impositions of monetary sanctions, the closing of discovery, or even dismissal of the complaint**." (*Id.* at 5 (emphasis in original)). Based upon Marseet's history of inflammatory and inappropriate language and communications, and his persistent attempts to justify the use of such language (*see id.* at 2), the Court determined that a supervised deposition was appropriate[3] and directed the parties to schedule a date for the deposition of Yazback. (*Id.* at 4-5). The deposition took place on September 7, 2022, and was supervised by the Court's law clerk Christin Cornetta, Esq. ("Cornetta").

Pursuant to this Court's direction, following the deposition, RIT filed a supplemental submission in further support of its request that Marseet be precluded from conducting further oral depositions and be limited to depositions by written questions. (Docket # 128). In its submission, RIT maintains that the transcript of Yazback's deposition demonstrates that Marseet was argumentative, confrontational, bullying, harassing, derogatory, and condescending, and used language that directly violated this Court's previous order. (*Id.* at 8-15). By contrast, Marseet contends that he "behaved professionally" during the deposition and

---

[3] The Court also directed the Clerk's office to electronically seal Marseet's current and future *pro se* filings pending further review by the Court due the inappropriate and abusive comments and personal attacks contained in Marseet's *pro se* filings. (*Id.* at 3).

that the witness and defendant's counsel disrupted the deposition.  (Docket # 152 at 9, 17-19).

He also maintains that the deposition transcript demonstrates that the witness's testimony was

not entirely truthful.  (*Id.* at 19-22).  Marseet further argues that depositions by written questions

will be more expensive than oral depositions and will impede his ability to fully examine the

witnesses.[4]  (*Id.* at 16).

## B.  <u>Oral Depositions</u>

"A deposition is meant to be a question-and-answer conversation between the

deposing [participant] and the witness."  *Hall v. Clifton Precision, a Div. of Litton Sys., Inc.*, 150

F.R.D. 525, 528 (E.D. Pa. 1993).  Rule 30(c)(1) of the Federal Rules of Evidence provides that

"[t]he examination and cross-examination of a deponent proceed as they would at trial under the

Federal Rules of Evidence."  Fed. R. Civ. P. 30(c)(1).  "During the taking of a deposition, the

witness has, in general, the same rights and privileges as would a witness testifying in court at a

trial."  8A Wright, Miller, and Marcus, Federal Practice and Procedure § 2113 (2d ed. 1994).

Accordingly, depositions are to "be conducted in a manner that simulates the dignified and

serious atmosphere of the courtroom[,] . . . [and] [c]onduct that is not permissible in the

courtroom during the questioning of a witness is ordinarily not permissible at a deposition."

*Ethicon Endo-Surgery v. U.S. Surgical Corp.*, 160 F.R.D. 98, 99 (S.D. Ohio 1995).

---

[4] Marseet also suggests that his ability to litigate this case *pro se* is hampered by his medical conditions. (*Id.* at 1, 6).  In support, Marseet has attached a letter from a mental health professional recommending that Marseet be permitted a leave of absence for several months.  (Docket # 152-4).  The letter, however, is more than two years old.  Marseet maintains that this Court has ignored his medical conditions and suggests that he has submitted medical records relating to his heart condition.  (Docket # 122 at 8).  Apart from the document attached to his supplemental submission (Docket # 152-4), the Court is unaware of any other medical documentation submitted by Marseet.  Indeed, Marseet has offered little information concerning his health conditions and has not explained how his health interferes with his ability to prosecute his claims.  Since he began representing himself less than one year ago, Marseet has filed approximately 62 submissions – an extraordinary number of filings that far exceeds the number of filings typically made by plaintiffs in discrimination cases, whether represented or *pro se*.  Marseet's prolific filings suggest that his medical conditions do not impede his ability to litigate this matter in any meaningful manner.  Of course, to the extent Marseet's health impedes his ability to meet case-related deadlines, he should confer with counsel for defendant to determine whether the parties can agree to extensions of the applicable deadlines.  Even where they cannot agree, Marseet is free to request extensions from the Court, which, as Marseet acknowledges, have been afforded him to date.  (*See* Docket # 152 at 1).

"Although the Federal Rules of Civil Procedure inform the procedures to be followed and the duties and rights of parties, witnesses, and counsel during and in connection with depositions, the rules are largely self-executing." *GMAC Bank v. HTFC Corp.*, 248 F.R.D. 182, 185 (E.D. Pa. 2008). Accordingly, "[f]or the process to succeed, it is essential that the parties, attorneys, and witnesses participating in depositions conduct themselves with civility and decency." *Id.*; *see also Clarity Sports Int'l LLC v. Redland Sports*, 2021 WL 2981038, *4 (M.D. Pa. 2021) ("[t]hat depositions proceed under the Federal Rules but occur outside the court's purview makes cooperation amongst [participants] even more critical") (quotation omitted). These procedures apply equally to *pro se* litigants. *See Sachs v. Matano*, 2016 WL 4179792, *9 (E.D.N.Y.) ("a court's special solicitude towards *pro se* litigants does not extend to the willful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights"), *report and recommendation adopted by*, 2016 WL 4186708 (E.D.N.Y. 2016). Thus, "one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Id.* at *7.

Courts have the authority, and indeed the duty, to ensure that standards of civility and professionalism are maintained during depositions. *See Horton v. Maersk Line, Ltd.*, 294 F.R.D. 690, 698 (S.D. Ga. 2013); *see United States ex rel. Baltazar v. Warden*, 302 F.R.D. 256, 267 (N.D. Ill. 2014) ("[w]hen there is a breakdown of decorum at a deposition, a court should use its authority to maintain standards of civility and professionalism") (internal quotation omitted). Indeed, "[i]t is precisely when animosity runs high that playing by the rules is vital[,] [and the] [r]ules of legal procedure are designed to defuse, or at least channel into set forms, the

heated feelings that accompany much litigation." *Redwood v. Dobson*, 476 F.3d 462, 469 (7th Cir. 2007).

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, a court "may for good cause shown, issue any order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Such orders may include, *inter alia*, "forbidding the disclosure or discovery," specifying the terms of any such discovery, or "prescribing a discovery method other than the one selected by the party seeking discovery." Fed. R. Civ. P. 26(c)(1)(A), (B) and (C). The burden is on the movant to demonstrate the "necessity for the issuance of a protective order." *See Soule v. RSC Equip. Rental, Inc.*, 2012 WL 5060059, *3 (E.D. La. 2012).

Based upon my careful review of the entire transcript of Yazback's deposition, I find that RIT has demonstrated good cause for a protective order precluding Marseet from taking additional oral depositions. The transcript demonstrates that throughout the deposition Marseet engaged in uncivil, discourteous, inflammatory, and abusive conduct that violated the basic rules and expectations of civility applicable to depositions, as well as this Court's July 15, 2022 Order explicitly directing Marseet to refrain from the use of abusive language in connection with this litigation. (Docket ## 111, 128-4). Although the instances of violative conduct reflected in the transcript are too numerous to comprehensively recount, the most egregious examples of Marseet's violative conduct include the following:

1.      Interrupting the witness or preventing him from completing his answer (*see, e.g.*, Tr.[5] 13-14, 38, 94, 97, 98, 113, 114, 133, 140, 151, 170, 198);[6]

2.      Arguing with or badgering the witness (*see, e.g.*, Tr. 19-20, 23-24, 25, 29, 31-32, 39, 43, 49-50, 53, 54-55, 57, 76, 88, 97-99, 103-104, 107, 112, 122, 137, 146-47, 170, 185, 200-201);[7]

3.      Posing argumentative questions (*see, e.g.*, Tr. 24, 45-46, 132, 200, 203), *see also example at* Tr. 128 ("Is it professional by RIT?  Is it under policy for RIT to prevent a researcher from publishing research paper in a conference that was held at RIT while RIT was allowing a female, who was using the research lab for sexual activities, including pornography, and also was allowing the PhD student who assaulted . . . me, lied about me, was racist against me, engaged in gender bias or gender discrimination?  So I think the question is clear.  Is it professional?  Are you accepting that?  Are you happy with that?");

4.      Accusing the witness, defendant, or non-parties of being "racist" or of attempting to assassinate Marseet or otherwise destroy his life (*see, e.g.*, Tr. 12, 15, 17, 39, 45, 67-74, 79, 80-81, 87, 128, 130, 150, 151, 163, 195, 204);[8]

5.      Accusing the witness of lying or attempting to evade answering (*see, e.g.*, Tr. 44, 53, 55, 76, 122, 170, 187, 203, 216);

6.      Using sarcasm or making personal attacks against the witness, including questioning his mental capacities (*see, e.g.*, Tr. 43, 50, 146 ("either you have mental issue to remember and you have to be examined"), 181 ("I think I have to withdraw the case and apologize to you, Mr. Yazback, because I see you are unable to remember things[,] [a]nd I feel . . . guilty that I'm bringing you here"), 181 ("can I request from the Court to

---

[5]  The transcript of Yazback's deposition will be referred to herein as "Tr. __." (Docket # 128-4).  The numbering of the transcript pages does not perfectly correspond to the numbering of the court's electronic docket header; there is a one-page discrepancy.  The citations herein refer to the transcript's page numbering.

[6]  The first time Marseet interrupted Yazback's answer, defendant's counsel objected, and Cornetta advised Marseet that it was improper to interrupt the witness while he was answering.  (Tr. 14 ("Mr. Marseet, after you've asked a question, you do have to permit the witness to answer the question.  Please try not to interrupt him.  If you need to ask a follow-up question after that, you're more than welcome to do so.")).  Despite those instructions, Marseet repeatedly interrupted Yazback's answers.

[7]  Marseet repeatedly engaged in this behavior even after Cornetta advised him that it was inappropriate to argue with Yazback's answers.  (Tr. 48 ("So it's not proper to argue with the witness about their answers . . . .  You're trying to find out information and what he knows, and that's the whole purpose of today[;] [i]t's not to argue with him about what you think the facts are")).

[8]  This conduct continued even after Cornetta reminded Marseet that he had been told by the Court to refrain from using such language.  (Tr. 68-70, 71-74 ("you need to refrain from accusing the witness of trying to assassinate you or ending your life")).

examine you for mental examination?"), 182 ("Mr. Yazback, his behavior is not stable, mentally, I believe");

7.      Raising his voice or speaking in an aggressive manner (*see*, *e.g.*, Tr. 30 (Marseet: "Don't force me to raise my voice in your face"), 36 (Cornetta: "you are raising your voice a little bit, and it is coming across as a little bit aggressive"), 69 (Cornetta: "I also want the record to reflect that Mr. Marseet has raised his voice very loudly and that he has spoken in an aggressive way"); 178 (Cornetta: "Mr. Marseet . . . please do not raise your voice"); and

8.      Maligning opposing counsel (Tr. 37 ("I see there is some hidden like behavior from her side"), 191 ("Ms. Upal, I don't know if you studied law or not").

Marseet's conduct continued throughout the deposition despite being advised by Cornetta, at times repeatedly, that such conduct was improper and despite his apparent ability to ask questions – when he chose to – without resort to inflammatory or abusive language.  The following exchange demonstrates this point:

|  |  |
|---|---|
| Marseet: | Did you attempt to assassinate me, Mr. Yazback? |
| Ms. Upal: | Objection.  That is so out of the bounds of questioning here.  It is so out of the bounds, Mr. Marseet. |

* * *

|  |  |
|---|---|
| Ms. Upal: | I'm going to object.  And do not answer that question. |
| Ms. Cornetta: | Mr. Marseet, you can either reframe the question or you can move on and ask a different question. |
| Mr. Marseet: | Okay.  Did you work to end my life, Mr. Yazback? |
| Ms. Upal: | Objection.  This is completely inappropriate and irrelevant.  And I am not – Mr. Yazback is not going to respond to these questions. |

* * *

> Ms. Cornetta: . . . Mr. Marseet, I think that you either need to reframe the question or ask a question about a particular fact or about a particular event that happened.  If you can[not] do that, I think we should move on.
>
> Mr. Marseet: I already asked, Ms. Cornetta, but you're colluding with the defendant.  [M]y question is very clear question, very specific question.  Did you – I will rephrase it.
>
> Mr. Marseet: Did you work to get me deported to my home – my home country?

(Tr. 67-70).  Later in the deposition, Marseet asked Yazback whether he had conducted an investigation after Marseet had transferred from RIT.  (Tr. 180).  In the midst of his question, Marseet indicated that he would be "polite or professional" (presumably in phrasing his question) and, unobjectionably, asked whether Yazback had investigated whether RIT had "engaged in wrongdoing."  (*Id.*).

In determining whether Marseet should be precluded from additional oral depositions, the Court notes the vast number of times that Cornetta was required to intervene in the four-hour deposition.  Despite advising the parties that she was present as an observer with the purpose of assessing the parties' ability to conduct depositions without excessive disputes (*see* Tr. 9), Cornetta was required to intervene on numerous occasions to remind Marseet of appropriate deposition conduct and to resolve disputes.  Indeed, twenty-six percent of the pages of the transcript (58 out of 218 pages) reflect interactions with or by Cornetta; measured differently, Cornetta had to intervene approximately every eight minutes (approximately 30 times during the four-hour deposition).

Moreover, Marseet's interactions with Cornetta herself were at times disrespectful and uncivil.  Marseet repeatedly interrupted Cornetta, despite repeated requests that he refrain

from doing so.  (Tr. 9-10, 22, 47-49, 64, 68-69, 122, 204-206, 214).  He also repeatedly argued

with Cornetta, raised his voice when speaking to her, and accused her of wasting his time,

colluding with RIT, and being dishonest.  (Tr. 47-49, 69, 178, 204-206, 214-15, 217).  Marseet

also repeatedly accused Cornetta and this Court of colluding with RIT or being otherwise biased

against him (Tr. 70, 72, 73, 127, 205, 216), and he reiterated those accusations in his most recent

filings (Docket ## 152 at 24 (suggesting any "clean judge" would deny RIT's motion and that

this Court has issued "revenge and racist orders against [Marseet]"); 155 at 6 ("[t]he court

observer was not fair, and she biased towards Defendant counsel").  That Marseet would persist

in his improper conduct, not just towards the witness and opposing counsel, but also towards the

Court-selected supervisor persuades this Court that neither additional court orders nor

supervision will effectively deter or dissuade Marseet from engaging in further uncivil behavior

in future depositions.[9]

Courts have not hesitated to find that behavior similar to that exhibited by

Marseet warrants sanctions or a protective order.  *See*, *e.g.*, *Green v. Cosco Shipping Lines Co.*,

2021 WL 5985123, *6 (S.D. Ga. 2021) (granting protective order where counsel "violated

ethical and professional norms in deposing the witnesses") (internal quotations omitted); *GMAC*

*Bank v. HTFC Corp.*, 248 F.R.D. at 185 (imposing sanctions where witness "sought to intimidate

opposing counsel by maintaining a persistently hostile demeanor, employing uncivil insults, and

using profuse vulgarity"); *Robinson v. Chefs' Warehouse*, 2017 WL 1064981, *4-11 (N.D. Cal.)

(imposing sanctions where attorney repeatedly made disparaging remarks to opposing counsel

---

[9]  Indeed, Marseet's supplemental submission demonstrates his continued unwillingness to comply with
this Court's orders regarding civility requirements.  (Docket # 152).  In his submission, Marseet suggests that he will
continue to use uncivil language unless the Court provides him the "legal bases of the orders" it has issued.  (*Id.* at
14).  Moreover, in his submission Marseet defends and again attempts to justify his use of uncivil language,
including accusing the defendant of being a "terrorist organization" and accusing the defendant, its employees, and
its counsel of being liars or "hav[ing] no honesty."  (*Id.* at 22-23).  Remarkably, he also states, "if [opposing
counsel] *be topless in public*, as she claimed it is legal since 1992, [p]laintiff will withdraw his complaint." (*Id.* at 13
(emphasis in original)).

during deposition, including "calling her a 'complete caricature', 'a joke,' 'confused,' 'pathetic,' 'a liar,' and 'the weakest lawyer I have seen in a very long time'"), *reconsidered in part*, 2017 WL 2617905 (N.D. Cal. 2017) (precluding counsel from attending future depositions); *United States ex rel. Baltazar v. Warden*, 302 F.R.D. at 261-68 (imposing sanctions where attorney made inappropriate, insulting and offensive remarks, including calling witness a liar, asking disrespectful and sarcastic questions impugning the witness's intelligence, and arguing with the witness and commenting on her answers); *Horton v. Maersk Line, Ltd.*, 294 F.R.D. at 697 (issuing protective order where attorney "frustrated the fair examination of [witness] with a barrage of arrogant, irrelevant, accusatory questions and caustic comments that no witness . . . should have to endure"); *Soule v. RSC Equip. Rental, Inc.*, 2012 WL 5060059 at *3 (granting protective order applicable to future depositions enjoining participants from: "(1) yelling or raising voices; (2) pounding on the table; (3) using a confrontational or argumentative tone or language; (4) accusing witnesses of lying, providing false testimony, or providing testimony that is not true; and (5) disrupting or cutting off witness responses"). On this record, which includes the prior issuance of a court order prohibiting Marseet from offensive and improper language, and an order requiring that the noticed deposition be conducted under supervision, I find that RIT has established good cause to preclude Marseet from taking any additional oral depositions. Pursuant to the Court's discretion under Rule 26(c)(1)(C), Marseet is limited to taking future depositions by written questions pursuant to the procedures set forth in Rule 31 of the Federal Rules of Civil Procedure.

        Review of the transcript also demonstrates that Marseet struggled significantly throughout the entire deposition, perhaps in part because English is not his native language (Tr. 23), to articulate or frame questions that were understandable to the witness and to which the

witness could respond with the factual information sought by Marseet.  Many of Marseet's

questions were objectively incomprehensible, often including compound questions and

unfounded factual assumptions.  For example, Marseet asked the following question:

> To prove to you that [a student], she lied, she's not honest person,
> she accused me that I engaged in violent acts, including kicking
> chairs, yelling, slamming things in the MABL lab on July 26th.
> The acts record, relying on my strong memory, shows it wasn't in
> the same place that I were in.
>
> * * *
>
> Yeah, can you explain that we were not in the same place, and she
> accused me that I engaged in violence?  Does this prove that she's
> honest person?

(Tr. 29-31).  Other examples include the following:

> Okay.  The information – the information regarding that I engaged
> in violence or violent actions, that I threatened these people, that I
> wanted to break the board, that I yelled, and they claimed that I did
> these actions in front of the kids.  And none of the kids reported
> anything against me.  And for your information, I met with one of
> the kids with his father, and I asked him, did you see me doing any
> aggressive action.  The kid say no.  And there were other RIT
> members in the MABL lab or in the other lab when we were
> teaching kids.  There were head department.  None of these people
> report anything against me.  So do you admit that they lied about
> me, or do you admit that you don't have physical evidence against
> me?

(Tr. 33).

> There was incident – and tell me if I was radical or whatever I
> mean the word that you said.  Two public safety officers came to
> my – the MABL lab, the research lab and kicked me out from the
> research lab even I didn't violate any policy.  Then they lied that I
> offered to – to leave.  The kicked me out in front of students and
> this is big insult.  And it's affecting me, 'til tomorrow, 'til I die.
> Okay.  And I, that time, I – I thought to suicide, okay, because this
> is a big insult.  I was professional, and I didn't retaliate against the
> – the girl who used the research lab for sexual activities, which I
> believe RIT is proud of her.  Can you explain why you didn't

> consider that I was professional and I didn't react or exhibit any –
> any reaction in some manner?

(Tr. 109-10).  The deposition transcript contains many instances demonstrating the difficulty

Marseet experienced in articulating his questions and obtaining factual information relevant to

his claims.

       The procedure of depositions by written questions, in addition to addressing the

uncivil behavior that occurred during the deposition, should improve Marseet's ability to obtain

the factual information he seeks.  By requiring Marseet to formulate written questions, he will

have the ability to pose questions without the time pressure inherent in an oral deposition and

may have greater success in articulating questions that the witness can understand and answer.

Moreover, the procedures outlined below provide a process by which the parties will be required

to work cooperatively and in good faith with respect to the written questions so that Marseet may

obtain properly relevant information through understandable questions.

       If Marseet wishes to pursue depositions by written questions, he must first serve

notices of deposition upon written questions upon the deponents in accordance with Rule

31(a)(3).  Such notices must also include the "name or descriptive title and address of the officer

before whom the deposition will be taken."  Fed. R. Civ. P. 31(a)(3); *see Woodward v. Mullah*,

2010 WL 3023117, *5 (W.D.N.Y. 2010) ("plaintiff's deposition notices fail to comply with Rule

31, which requires that the notice of deposition upon written questions set forth the officer before

whom the deposition will be taken").  Any costs associated with such depositions must be borne

by Marseet.  *See id.* ("[p]laintiff's *in forma pauperis* status entitles him to free service of process

by United States Marshals, however, it does not entitle him to waiver of witness fees, mileage, or

deposition officer fees") (ellipses omitted).  Finally, to the extent Marseet wishes to depose any

nonparty witnesses and wishes to compel his or her response through use of a subpoena, Marseet

must provide the proposed subpoena, notice, and the written questions to the Court in accordance with Rules 31(a)(1) and 45 of the Federal Rules of Civil Procedure. The Court will review the submissions and issue the subpoena, if appropriate.

Despite Marseet's conduct towards the witness, opposing counsel, and the court-appointed supervisor, RIT nonetheless wishes to conduct an oral deposition of Marseet. (Docket # 77 at 8 n.7). RIT should not be deprived of its chosen method of discovery due to Marseet's conduct. Accordingly, the Court will permit RIT to orally depose Marseet and will again supervise the proceeding. Marseet is warned that he must refrain from uncivil, offensive and discourteous behavior. Specifically,

(1)     the parties must refrain from raising their voices;

(2)     the parties must refrain from interrupting each other; and,

(3)     the parties must refrain from uncivil conduct, personal attacks or inflammatory language, such as the language identified in the Court's July 12, 2022 Order (Docket # 111) and any of the conduct described at pages 9-13 of this decision.

Finally, Marseet has requested that Upal be precluded from participating in future depositions. (Docket ## 138, 155). Because Marseet is limited to taking depositions by written questions, the only remaining oral deposition is his own. Marseet maintains that Upal should be precluded from future depositions because she laughed at plaintiff, interrupted Marseet's questions, interrupted Yazback's answers or attempted to change his answers, objected to Marseet's use of certain photographs, raised her voice, and requested that Marseet estimate the length of questioning remaining before the deposition would be concluded. (*Id.*).

Review of the deposition transcript demonstrates little support for Marseet's allegations regarding Upal's conduct during the deposition. To the contrary, Upal behaved reasonably throughout the deposition, despite Marseet's uncivil and inappropriate behavior.

17

Although there were instances when Upal interrupted Marseet, they generally occurred when she was attempting to object to a question posed by Marseet; as Cornetta explained to Marseet, the remote format of the deposition and the length and complexity of his questions at times made it difficult to determine when he had concluded his question.  (*See*, *e.g.*, Tr. 22 ("I do think Ms. Upal is trying to determine when the end of your question is and then interject her objection before the witness answers[;] [i]t is . . . difficult to do that . . . over the video recording[,] [a]nd it is also difficult sometimes to determine exactly when your question has ended"), 178).  On this record, Marseet's request that Upal be precluded from attending or participating in future depositions is denied.  *See Ofoedu v. St. Francis Hosp. & Med. Ctr.*, 2005 WL 8166070, *2 (D. Conn. 2005) ("[t]he [c]ourt did not find any support, however, for [p]laintiff's allegations regarding defense counsel's conduct[;] [i]n reviewing a large sampling of [p]laintiff's citations of [defense counsel's] alleged misconduct[,] the [c]ourt found almost no relevant information and no impropriety on the part of [defense counsel]"); *Sczesnik v. McDonald's Corp.*, 1986 WL 5740, *2 (N.D. Ill. 1986) ("plaintiff's counsel was reasonable, well-mannered and professional in spite of extreme provocation[;] [i]n fact it is surprising that he put up with as much as he did without terminating the depositions").

Marseet has filed a motion requesting that the Court direct RIT and its counsel to stop "lying against [Marseet], to stop using speculations against [him], and to stop abusing or using offensive words about [him] or about [his] filing[s]."  (Docket # 139).[10]  His single-page motion does not identify any specific conduct by RIT or its counsel, and the Court is unaware of

---

[10]  In several of its most recent responsive filings, including its opposition to this motion, RIT maintains that Marseet's recent filings warrant the imposition of sanctions on the grounds that they are either frivolous, repetitive, or violate previous court orders.  (Docket ## 145 at 4-8; 146 at 8-9; 147).  To the extent RIT seeks sanctions against Marseet, it must file a formal motion seeking affirmative relief.

any improper or uncivil conduct on their part.[11]   Accordingly, this motion is denied.  Marseet has

also filed a motion requesting that the Court provide the legal bases for its orders, particularly the

Court's direction that he refrain from using uncivil language.  (Docket # 140).  This Court

already provided the basis for its order regarding Marseet's uncivil and inappropriate language in

the order itself (Docket # 111), and this decision further explains the litigants' duties to treat each

other with civility during all aspects of litigation.  Accordingly, his request for further

explanation from the Court is denied.

       For the reasons discussed above, this Court denies Marseet's motions seeking

leave to conduct or arrange additional oral depositions or requesting the issuance of subpoenas

for oral deposition testimony (Docket ## 40, 41, 42, 54, 98, 106, 112, 113), his motion to

preclude Upal from participating in his deposition (Docket # 138), his motion for an order

regarding RIT's and Upal's conduct (Docket # 139), and his motion for further explanation of

the legal bases for the Court's prior Orders (Docket # 140).  That portion of RIT's motion for a

protective order that seeks to preclude Marseet from conducting oral depositions (Docket # 45) is

granted.

## C.  <u>Number of Depositions</u>

       I turn next to the number of depositions that Marseet may be permitted to take by

written questions.  Marseet seeks the Court's permission to conduct more than ten depositions.

(Docket # 32).  Specifically, Marseet seeks to depose the following twenty-six individuals: TH[12],

---

[11]  Marseet's filings are replete with accusations that RIT, its counsel, and various witnesses have lied.  Of course, determinations of credibility and resolution of conflicting evidence are issues for the jury or trier of fact.

[12]  Marseet's filings are replete with inappropriate and caustic personal attacks against this individual, who is a former RIT student.  Accordingly, the Court will refer to the individual herein as "TH."

Yazback, Sohail Dianat, James Stefano, David Munson, David Graupman, Waleed Meleis,[13] Jamie Weiler, Julia Lowder, Kimberly Butler, Ashley Meyer, Heath Boice-Pardee, Stacy DeRooy, Jessica Rotundo Eckock, Dr. Ferat Sahin, Celal Savur, Karthik Subramanian, Jeff Cox, Allison Lucenta, Julia Day, Jamie Kaplan, Caroline Downey, Mary Maida, Mark Jannoni, Alyssa Bulpett, and Ramon Flores.[14]   (Docket # 112).

Defendants contend that the allegations in the complaint concern Marseet's treatment while he was employed with RIT and the investigation of the complaint against him, which resulted in a student conduct hearing and a subsequent appeal.  Defendants maintain that Marseet should be limited to deposing individuals knowledgeable about these specific topics.

According to defendants, the individuals with the most knowledge on these topics are Yazback, Heath Boice-Pardee, Jessica Rotundo Eckock, and Ferat Sahin.  (Docket # 45).  Dr. Ferat Sahin is the Department Head of Electrical and Microelectronic Engineering at RIT and was Marseet's advisor during the relevant time.  (Docket # 45-1 at ¶ 16(b)).  Defendants thus contend that Sahin is familiar with Marseet's studies and employment while at RIT.  (*Id.*). Yazback, whose deposition has been conducted, is the Assistant Director of Public Safety, and he oversaw the investigation of the TH's complaint against Marseet.  (*Id.* at ¶ 16(a)).  According to defendants, Rotundo Eckock, Associate Director at the Center for Student Conduct and Conflict Resolution, oversaw the campus disciplinary hearing involving Marseet.  (Docket

---

[13]  RIT suggests that this individual's name is "Waleed Meleis" and not "Walled Melies."  (Docket # 45-3 at 13).  The individual will be referred to as "Meleis" herein.

[14]  Several of Marseet's motions identify the various individuals whom he wishes to depose.  One of the later filings purports to contain the "Final List" of proposed deponents.  (Docket # 112).  This list does not identify several individuals included on previous lists, including Gill Tsouri, Laura Crosetti, Corinda Crossdal, Rounak Singh Nard, Ray Ptucha, and the individual who filed "D0001415."  (*Id.*).  Accordingly, the Court understands that Marseet no longer desires to conduct depositions of these individuals.

In his supplemental submission, Marseet suggests that he may be able to reduce his witness list to seventeen proposed deponents but only if he is permitted to conduct their depositions by oral examination.  (Docket # 152 at 4).  For the reasons discussed *supra*, the Court has concluded that Marseet should be limited to depositions upon written questions.

# 45-1 at ¶ 16(d)).  Heath Boice-Pardee is the Associate Vice President of Student Development and Student Affairs and was the Chair of the Appeals Board during Marseet's appeal of his suspension.[15]

Although defendants concede that some of the proposed deponents may have relevant knowledge, they maintain that such knowledge would be duplicative and unnecessarily cumulative.  (Docket # 45-3 at 5).  Marseet disagrees, countering that, in addition to his claims of discrimination in connection with his employment and the disciplinary process, he also alleges that RIT retaliated against him for his complaints about disparate treatment.  (Docket # 50 at 36-37).  According to Marseet, the acts of retaliation continued after his expulsion and included sharing information with immigration officials and other colleges and universities.  (*Id.*).

Rule 30(a)(2)(A)(i) of the Federal Rules of Civil Procedure presumptively limits to ten the number of depositions that each side may conduct.  *See* Fed. R. Civ. P. 30(a)(2)(A)(i) ("A party must obtain leave of court, and the court must grant leave to the extent consistent with the principles stated in Rule 26(b)(1) and (2) . . . [if] the deposition would result in more than 10 depositions being taken under this rule or Rule 31"); *Parimal v. Manitex Int'l, Inc.*, 2021 WL 1976311, *1 (D. Conn. 2021) ("[a]bsent leave of court, Rule 30 of the Federal Rules of Civil Procedure presumptively limits the number of depositions to ten per side").  The purpose of this rule is to "enable courts to maintain a tighter rein on the extent of discovery and to minimize the potential cost of wide-ranging discovery."  *Sigala v. Spikouris*, 2002 WL 721078, *3 (E.D.N.Y. 2002) (internal quotations and brackets omitted); *see also Commodity Futures Trading Comm'n v. Commodity Inv. Grp., Inc.*, 2005 WL 3030816, *1 (S.D.N.Y. 2005) ("Rule 30(a)(2)(A) was enacted to control discovery costs and prevent harassment or undue delay").  Thus, a party

---

[15]   The student conduct hearing resulted in Marseet's suspension.  (Docket # 45-1 at Exhibit ("Ex.") B).  Marseet appealed this determination.  The Appeals Board modified the original decision to change the sanction from suspension to expulsion.  (*Id.* at Ex. C).

seeking to conduct additional depositions has the burden to "demonstrate cause to exceed the ten

deposition limit contemplated by the Federal Rules." *Brunckhorst v. Bischoff*, 2022 WL

6991285, *1 (S.D.N.Y. 2022) (internal quotations omitted).

"When such leave is sought, the court 'must limit the frequency or extent of

discovery . . . if it determines that . . . the discovery sought is unreasonably cumulative or

duplicative, or can be obtained from some other source that is more convenient, less

burdensome, or less expensive.'" *See id.* (quoting Fed. R. Civ. P. 26(b)(2)(C)).  The court should

also consider whether "the party seeking discovery has had ample opportunity to obtain the

information by discovery in the action and whether the burden or expense of the proposed

discovery outweighs its likely benefit, considering the needs of the case, the parties' resources,

the importance of the issues at stake in the action, and the importance of the discovery in

resolving the issues." *See id.* (quoting *Galgano v. Cnty. of Putnam*, 2021 WL 2138759, *1

(S.D.N.Y. 2021)).  The mere fact that an individual might have relevant information does not

entitle a party to depose that individual.  *Commodity Futures Trading Comm'n v. Commodity

Inv. Grp., Inc.*, 2005 WL 3030816, at *1 ("although a witness might have discoverable

information, a party is not always entitled to depose that individual").

Based upon my review of the submissions, I find that Marseet has failed to

demonstrate good cause to exceed the ten deposition limit set forth in the rule.  As an initial

matter, Marseet has made no effort to identify which witnesses (apart from TH) would be

included within his initial ten depositions and which he would depose only in the event he is

granted leave from the Court.[16]  Further, he has not explained the relative importance of each of

the depositions.  *See Brunckhorst v. Bischoff*, 2022 WL 6991285 at *2 ("[plaintiff] has not stated

---

[16] Although Marseet's list of proposed deponents is numbered (Docket # 112), he has submitted several
different lists.  Moreover, he has not indicated that the numbering reflects his prioritization.

which witnesses he seeks to depose with his initial ten depositions and which he would depose only in the event he receives leave of this [c]ourt, nor has he indicated the relative importance of the depositions"); *Galgano v. Cnty. of Putnam*, 2021 WL 2138759 at *2 ("the [defendants] have made no effort to rank or prioritize the depositions they seek to take[;] [e]ven if the [c]ourt was persuaded that some relaxation of the ten-deposition limit was warranted, it would be inappropriate for the [c]ourt to undertake the necessary winnowing of the [defendants'] witness list on their behalf"). Moreover, at this stage only a single deposition has been conducted in this case. *See Parimal v. Manitex Int'l, Inc.*, 2021 WL 1976311 at *2 ("plaintiff has not yet exhausted his presumptive limit of ten depositions[;] . . . [i]f after plaintiff has taken the ten depositions presumed by the Rules to be sufficient he can show good cause that there is non-cumulative deposition discovery that he still needs, and that such discovery is proportional to the needs of the case, plaintiff may seek leave to take one or more additional depositions") (internal quotations and brackets omitted); *Gen. Elec. Co. v. Indem. Ins. Co. of N. Am.*, 2006 WL 1525970, *2 (D. Conn. 2006) ("courts will generally not grant leave to expand the number of depositions until the moving party has exhausted the ten depositions permitted as of right").

Significantly, Marseet's submissions do not provide sufficient information to permit the Court to determine the nature of all of the proposed deponents' testimony or how each deponent's testimony is expected to differ from the testimony of others. Although his supplemental submission provides some additional information with respect to certain of the proposed witnesses, Marseet's explanation for many of the proposed witnesses' testimony is vague and conclusory and often merely identifies the claim about which they may have relevant testimony. (*See*, *e.g.*, Docket ## 112 (identifying proposed relevance as "related to the Retaliation" or "related to the Retaliation and Discrimination" or "colluded with Defendant");

152 at 5-6 (identifying proposed relevance as "related to the retaliation" or "[r]elated to the discrimination and retaliation")).  Accordingly, the Court cannot ascertain "whether the testimony sought from certain witnesses would be unreasonably cumulative or duplicative."  *See Parimal*, 2021 WL 1976311 at *2.

   Conversely, I find that RIT has failed to establish that Marseet should be denied the ten depositions presumptively permitted by the rules.  In support of their request for a protective order limiting the number of depositions to four, RIT focuses primarily on their concerns regarding Marseet's anticipated uncivil behavior during the depositions (*see* Docket # 45-3 at 23).  This concern, however, is mitigated by Marseet's restriction to written questions.  Moreover, in arguing that several witnesses have no relevant information to offer, RIT overlooks that Marseet's complaint contains allegations of retaliation following his expulsion from the university.  (Docket # 45-3 at 7-8, 17-19).

   For the reasons stated above, that portion of RIT's motion that seeks to limit Marseet to four depositions (Docket # 45) is denied, and Marseet's motion for leave to take more than ten depositions (Docket # 32) is denied.  In the event that Marseet files a renewed motion to take additional depositions after reaching the presumptive limit, Marseet must rank the requested remaining depositions, explain with specificity his need to take more than ten depositions, and explain why the additional depositions would not be unreasonably cumulative or duplicative of deposition testimony previously offered.

   In order to permit the depositions by written questions to be completed in an efficient and orderly manner, the Court directs the following procedure:

   1. On or before **February 28, 2023**, Marseet shall serve RIT with proposed notices for depositions upon written questions for up to nine party or non-party witnesses.  For each notice, Marseet should include the written questions he seeks to propose.

2.   On or before **March 21, 2023**, RIT shall respond in writing and identify any objections it has regarding the proposed witnesses or the proposed written questions.

3.   On or before **April 3, 2023**, the parties shall confer in a good faith attempt to resolve any disputes.

4.   On or before **April 10, 2023**, for any proposed non-party witnesses to which RIT does not object or to which the parties have resolved all disputes, Marseet shall file with the Court a request for a subpoena.  Each request shall include the deposition notice, written questions, and proposed subpoena.

5.   For any unresolved disputes, on or before **April 17, 2023**, RIT shall file a motion seeking a protective order precluding or limiting the proposed deposition(s).  Marseet shall respond on or before **May 12, 2023**.

## III.   <u>Motion to Disqualify</u>

I turn last to Marseet's motion seeking this Court's disqualification and/or recusal. (Docket # 101; *see also* Docket ## 105; 108; 112-1; 122).  Marseet argues that recusal is warranted on the grounds that this Court has delayed resolving his pending motions and has demonstrated bias in favor of RIT and against him.[17]  (Docket # 101).  He requests that "a [m]ale [j]udge" be assigned to the case "because all the women who [are] involved in [Marseet's] cases [have] conspired against him."  (*Id.* at 5).  In supplemental submissions, Marseet accuses this Court of "colluding with [RIT] against [him], discriminating against [him], and behaving maliciously," and issuing "adverse and revenge orders."  (Docket ## 105 at 1; 122 at 13-17). Review of Marseet's submissions underscores that his genuine complaints are the pace of the decisionmaking process (*see*, *e.g.*, Docket ## 105 at 1-3; 112-1 at 4) and the merits of some of

---

[17]   As an alleged example of bias, Marseet cites the fact that this Court did not extend the deadline for expert disclosures when it amended the scheduling order on March 9, 2022 (Docket # 29).  (Docket # 101 at 2). According to Marseet, he informed the Court that one of the reasons that he wanted to represent himself was that his attorney had failed to identify an expert witness.  (*Id.*).  The Court issued the amended scheduling order after receiving a March 9, 2022 letter from RIT's counsel containing a joint-request by the parties to extend the scheduling order.  The letter contained a proposed schedule that did not include any dates for the identification of experts.  In any event, Marseet subsequently filed a motion requesting an extension of the deadline for the identification of experts, which this Court granted.  (Docket ## 84, 118).

the decisions (*see*, *e.g.*, Docket ## 105 at 3-6; 112-1 at 4-10; 122).  Neither of these grounds

warrants recusal.  *See Chen v. Chen Qualified Settlement Fund*, 552 F.3d 218, 227 (2d Cir. 2009)

(per curiam) ("[g]enerally, claims of judicial bias must be based on extrajudicial matters, and

adverse rulings, without more, will rarely suffice to provide a reasonable basis for questioning a

judge's impartiality"); *United States v. Alevras*, 114 F. App'x 488, 489 (3d Cir. 2004)

(unpublished decision) ("we find baseless appellant's suggestion that the district judge should be

recused on remand because he allegedly took too long to decide the motion, and then allegedly

decided it too quickly after appellant wrote the judge to complain that it was taking too long for

the motion's disposition"); *Roudabush v. Pirelli*, 2015 WL 5567413, *4 (D.N.J. 2015) (recusal

not warranted where plaintiff contended that the court had "taken too long in resolving his

pending motions, of which there have been many[;] [d]issatisfaction with the litigation process is

not grounds for recusal"); *Drumgo v. Roop*, 2015 WL 1788940, *2 (D. Del. 2015) (plaintiff's

complaints regarding the length of time to issue decisions was not a basis for recusal).

    Marseet also alleges that this Court "attempt[ed] to threaten" him by having a law

enforcement agent contact him.  (Docket # 122 at 2, ¶ 4; 12, ¶ 2).  On July 7, 2022, staff from the

Clerk's office informed chambers that during a visit to the Clerk's office that day Marseet

became visibly upset, raised his voice while communicating with Clerk's office staff, and caused

a disruption.  According to staff, Marseet expressed frustration that his filing from the previous

day had not yet been uploaded to the electronic docket.  In fact, the Court had directed that the

filing be sealed because it contained a sensitive depiction,[18] and the following day the Court

issued an order prohibiting Marseet from filing with or transmitting to the Court documents

containing such depictions without first obtaining leave to do so.  (Docket # 102).  The Court

---

[18] Specifically, one of the attachments to the filing contained a partially nude image of a non-party.
(Docket # 98).

also directed the Clerk's office staff to review Marseet's filings prior to uploading them in order to ensure that they were in compliance with the Court's order.

As a result of Marseet's behavior, Clerk's office staff requested that a court security officer be required to escort Marseet to and from the Clerk's office. Personnel from the United States Marshal's Office responded to the request and suggested that they first contact Marseet to speak to him about acceptable behavior in the courthouse and advise him that his filings would be reviewed prior to being uploaded. In my estimation, this response was completely appropriate, evidences no judicial bias, and does not justify recusal.

With respect to Marseet's allegations of unreasonable delay in rendering its decisions, review of the docket shows that since Marseet began to represent himself less than a year ago (Docket # 30), the parties have filed approximately thirty-seven motions seeking a variety of relief, thirty-two of which were filed by Marseet (Docket ## 32, 34, 37, 38, 39, 40, 41, 42, 44, 45, 52, 54, 55, 60, 65, 73, 74, 81, 83, 84, 95, 99, 100, 101, 112, 113, 123, 129, 130, 131, 133, 134, 136, 137, 138, 139, 140). The Court has worked diligently to address the many motions and requests for Court intervention that the parties have filed. (*See* Docket ## 36, 56, 87, 96, 102, 103, 110, 111, 117, 118, 127, 132, 141). Despite the Court's efforts, numerous other motions remain pending consisting of approximately sixty related filings. (Docket ## 32, 37, 39, 40, 41, 42, 44, 45, 48, 49, 50, 51, 52, 54, 58, 60, 66, 68, 69, 70, 71, 72, 74, 77, 78, 83, 88, 89, 91, 94, 101, 104, 105, 106, 108, 112, 113, 119, 120, 122, 123, 125, 128, 129, 135, 137, 138, 139, 140, 144, 145, 146, 147, 148, 149, 152, 153, 154, 155, 156). This Decision and Order resolves fifteen of the pending motions (Docket ## 32, 40, 41, 42, 44, 45, 54, 101, 106, 112, 113, 138, 139, 140), and decisions on the remaining motions (Docket ## 37, 39, 52, 60, 74, 83, 123, 129, 135, 137) will be addressed in separate decisions.

Many of the motions filed by Marseet seek the same relief, and many include multiple filings that conflate or refer to issues raised in other pending motions, which only complicates the task of identifying the precise issues pending before the Court and results in unnecessary delay resolving the issues.  Indeed, due to Marseet's prolific filings, the Court issued an order directing the parties to refrain from filing further motions or requests for relief in this matter until the Court was able to address the numerous requests currently pending before the Court.  (Docket # 141).  In the future, Marseet must comply with the local rules of civil procedure governing motion practice.  These rules set forth the permissible filings in support of a motion, which include an opening submission, an opposition submission, and, if requested by the movant, a single reply.  *See* W.D.N.Y. Loc. R. Civ. P. 5.2 and 7 (replies permitted only if "the moving party has stated an intent to reply").  These submissions should not be supplemented by letters or other filings absent express leave from the Court.  *See* W.D.N.Y. Loc. R. Civ. P. 7(a)(6) ("[a]bsent permission of the Judge hearing the motion, sur-reply papers are not permitted").  Moreover, Marseet should not file multiple motions seeking the same relief.  Finally, Marseet's submissions must comply with the page limitations and form requirements of the local rules, which require the submissions to be in 12-point font, double spaced, and contain one-inch margins on all sides.  *See* W.D.N.Y. Loc. R. Civ. P. 10. **Marseet is cautioned that filings not in compliance with the local rules will be stricken and not considered by the Court.**

Despite this Court's previous orders, in his most recent filings Marseet continues to use uncivil language regarding the defendant, its counsel, and non-parties.  (Docket ## 152 (containing numerous allegations that individuals lied and attempted to assassinate Marseet or end his life and also suggesting that he would withdraw his complaint if defendant's counsel appears partially unclothed); 153 (repeatedly accusing individuals of lying); 154 (repeatedly

28

accusing individuals of lying); 155 (repeatedly accusing individuals of lying and questioning intelligence of defendant's counsel); 156 at 2, ¶ 9 (despite acknowledging that the Court directed plaintiff to refrain from accusing others of lying, accusing defendant and its counsel of "lying intentionally, attempt[ing] to end his life, work[ing] to end his life, attempt[ing] to assassinate him")).  Moreover, Marseet's filings suggest that he will continue to use such language in blatant disregard of this Court's orders.  *See* Docket ## 152 at 14 (suggesting that he will continue to use uncivil language unless the Court provides him the "legal bases of the orders" it has issued), 22-23 (attempting to justify uncivil language, including accusing the defendant of being a "terrorist organization" and accusing the defendant, its employees, and its counsel of being liars or "having no honesty"); 154 at 1 ("[i]f [d]efendant and its counsel continue to lie against the [p]laintiff and abuse him, [p]laintiff will use language that fit to the level of the [d]efendant and its counsel[;] [t]his is not a threat; it is an education to Judge Payson about the default result of lying about the [p]laintiff and abusing him)).  **Marseet is warned that any future filings that violate this Court's orders or any applicable rules may be stricken from the record without leave to submit a replacement filing.  Moreover, continued violations of this Court's orders by Marseet may result in the imposition of sanctions, which, in addition to the striking of any noncompliant submissions, may include the imposition of monetary sanctions, the closing of discovery, or the dismissal of the complaint.**

For the reasons discussed above, Marseet's motion seeking this Court's recusal (Docket # 101) is denied.

## CONCLUSION

For the reasons stated above, I determine that Marseet may take up to ten depositions by written questions, but he may not take any further oral depositions. Accordingly, RIT's cross-motion for a protective order **(Docket # 45)** is **GRANTED in part and DENIED in part**, RIT's motion to seal **(Docket # 44)** is **GRANTED**, and Marseet's motions seeking a variety of relief **(Docket ## 32, 40, 41, 42, 54, 98, 101, 106, 112, 113, 138, 139, 140)** are **DENIED**.

In order to permit the depositions by written questions to be completed in an efficient manner, and in an attempt to resolve any anticipated disputes, the Court directs the following procedure:

1.    On or before **February 28, 2023**, Marseet shall serve RIT with proposed notices for depositions upon written questions for up to nine party or non-party witnesses. For each notice, Marseet should include the written questions he seeks to propose.

2.    On or before **March 21, 2023**, RIT shall respond in writing and identify any objections it has regarding the proposed witnesses or the proposed written questions.

3.    On or before **April 3, 2023**, the parties shall confer in a good faith attempt to resolve any disputes.

4.    On or before **April 10, 2023**, for any proposed non-party witnesses to which RIT does not object or to which the parties have resolved all disputes, Marseet shall file with the Court a request for a subpoena. Each request shall include the deposition notice, written questions, and proposed subpoena.

5.     For any unresolved disputes, on or before **April 17, 2023**, RIT shall file a motion seeking a protective order precluding or limiting the proposed deposition(s).  Marseet shall respond on or before **May 12, 2023**.

**IT IS SO ORDERED.**


                                        _s/Marian W. Payson_____
                                         MARIAN W. PAYSON
                                        United States Magistrate Judge

Dated: Rochester, New York
       January 27, 2023