UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AKRAM MARSEET,

                              Plaintiff,

            v.

ROCHESTER INSTITUTE OF
TECHNOLOGY, et al.,

                              Defendant.
_____

DECISION & ORDER

20-CV-7096FPG

## PRELIMINARY STATEMENT

On December 17, 2020, plaintiff Akram Marseet ("Marseet") filed this

discrimination action against his former employer Rochester Institute of Technology ("RIT")

asserting federal and state law claims of retaliation and discrimination on the basis of race,

ethnicity, national origin, and disability.  (Docket # 1).  Marseet alleges that he is from Libya and

came to the United States on a student visa.  (*Id.* at ¶ 9).  In August 2015, Marseet enrolled at

RIT in a graduate program in electrical engineering.  (*Id.* at ¶ 10).  While enrolled at the

university, Marseet was hired as a student employee.  (*Id.* at ¶¶ 12-13).

Marseet alleges that his supervisor treated him differently due to his race and

national origin, including by offering him less desirable assignments and compensating him at a

lower rate than his peers.  (*Id.* at ¶¶ 13-14).  According to Marseet, when another student made

false allegations against him, RIT conducted a campus disciplinary proceeding against him.  (*Id.*

at ¶ 15).  Marseet alleges that both the allegations and RIT's decision to proceed with the

disciplinary proceeding were based upon his national origin.  (*Id.*).

Marseet maintains that during the disciplinary process he informed RIT's representatives and employees that he suffered from a medically-diagnosed disability and that he required assistance to defend himself. (*Id.* at ¶ 17). Marseet contends that RIT failed to provide the required accommodation for his disability and conducted the proceedings without providing him effective assistance. (*Id*. at ¶ 18). At the conclusion of the disciplinary proceedings, Marseet was expelled from the university. (*Id.* at ¶ 19).

In addition to these purported discriminatory acts, Marseet also maintains that RIT retaliated against him after he complained about disparate treatment. (*Id.* at ¶ 24). According to Marseet, RIT's retaliatory actions included denying him due process and an effective advocate during the disciplinary process, expelling him from the university based upon false accusations, entering derogatory and inaccurate information into his academic and personnel files, communicating with federal immigration officials in an effort to have him deported, and disclosing derogatory and inaccurate information to other colleges and universities in an attempt to prevent him from obtaining a doctoral degree. (*Id.*).

Currently pending before the Court are several discovery-related motions filed by Marseet and a motion to compel filed by RIT. (Docket ## 37, 39, 52, 60, 123, 137). Specifically, Marseet filed a motion to compel further responses to his document demands (Docket # 39), a motion for a protective order (Docket # 37), a motion requiring RIT to remove any redactions from documents it has already produced (Docket # 52), a motion seeking an order confirming or directing that the Family Educational Rights and Privacy Act ("FERPA") does not apply in this litigation (Docket # 123), and a motion seeking sanctions (Docket # 137), and RIT has filed a motion to compel further responses to its written discovery demands (Docket # 60).

Also pending are Marseet's motions for an independent medical examination (Docket # 74), permission to file electronically (Docket # 129), and permission to disclose certain documents to proposed experts and to use those documents during depositions (Docket # 135).  These motions are addressed below.

## I.     <u>Applicability of FERPA (Docket # 123)</u>

Marseet has filed a motion requesting that the Court issue an order providing that RIT is not precluded under FERPA from producing relevant discovery in this litigation.  (Docket # 123).  According to Marseet, RIT has objected to producing documents responsive to Marseet's document demands on the grounds that the documents, which pertain to other students and include academic transcripts, pay records, access records, and I20 forms, are protected from disclosure pursuant to FERPA.  (*Id.*).  Marseet maintains that FERPA does not prohibit RIT from complying with his discovery demands because FERPA contains an exception for disclosure made in response to a judicial order or a lawfully issued subpoena.  (*Id.*).  According to Marseet, his document demands are the functional equivalent of a lawfully issued subpoena.  (*Id.*).  RIT opposes the motion on the grounds that Marseet seeks information protected under FERPA that is irrelevant to the claims and that, even if the information were relevant, he has not demonstrated a "genuine need for the information that outweighs the privacy interests of the [other] students."  (Docket # 125).

FERPA provides in relevant part as follows:

No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information . . . unless

* * *

3

> (B) . . . such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena, upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution or agency.

20 U.S.C. § 1232g(b)(2)(B).

One purpose of FERPA is to protect students' privacy rights by limiting the transferability and disclosure of their records without their consent. *See Rios v. Read*, 73 F.R.D. 589, 597 (E.D.N.Y. 1977). To achieve its goals, FERPA deters schools from adopting policies of releasing student records by threatening financial sanctions. *Id.* at 598. Accordingly, "FERPA does not create a privilege against disclosure of student records," *Stellwag v. Quinnipiac Univ.*, 2010 WL 4823355, *1 (D. Conn. 2010), and it "does not prevent the disclosure of students' educational records in connection with discovery in a case," *Doe v. Yale Univ.*, 564 F. Supp. 3d 11, 20 (D. Conn. 2021) (quotation omitted). Rather, "in light of the privacy concerns embodied in FERPA, courts have imposed a higher burden on litigants moving to compel the disclosure of educational records" that requires the litigant "to demonstrate a genuine need for the information that outweighs the privacy interest of the students." *Stellwag v. Quinnipiac Univ.*, 2010 WL 4823355 at *1 (internal quotations omitted).

In other words, although FERPA does not by its terms prohibit RIT from producing student records in response to Marseet's discovery demands, it does place a heightened burden upon Marseet to demonstrate that his need for the information outweighs the privacy interests of the students to whom those records pertain. Consistent with applicable caselaw, Marseet's motion requesting that the Court issue a blanket order "notifying [RIT] that FERPA is exempted and ordering [it] to produce all the [d]ocuments [Marseet] requested in [his] discovery demand about other students" **(Docket # 123)** is **DENIED**. The Court will address the

4

parties' disputes regarding specific discovery demands seeking student records in connection

with its determination on Marseet's motion to compel (Docket # 39).


## II.      Removal of Redactions (Docket # 52)

On May 10, 2022, Marseet filed a motion requesting a court order compelling

RIT to remove all redactions from the documents it has produced and reproduce the unredacted

documents to Marseet.  (Docket # 52).  RIT opposes the motion on the grounds that Marseet

failed to meet and confer with it prior to filing the motion.  (Docket # 78).  RIT also maintains

that the redactions are appropriate to avoid production of FERPA-protected information and/or

other sensitive and non-relevant information.  (*Id.*).  RIT also maintains that some of the

documents in its possession contained redactions before production to Marseet, and RIT was not

responsible for making those redactions.  (*Id.*).

The applicable rules of civil procedure require the parties to confer or attempt to

confer in good faith to try to resolve discovery disputes without court intervention before filing a

motion to compel.  Fed. R. Civ. P. 37(a)(1).  To verify that the requirement has been satisfied,

Rule 37(a)(1) obligates a party filing a motion to compel to "include a certification" that the

movant has in good faith conferred or attempted to confer with the opposing party or counsel.

Fed. R. Civ. P. 37(a)(1).  This Court's local rules also require parties seeking judicial

intervention to resolve a discovery dispute to include an affidavit "showing that sincere attempts

to resolve the discovery dispute have been made."  W.D.N.Y. Loc. R. 7(d)(3).  The local rules

further provide that "no motion for discovery and/or production of documents . . . shall be heard

unless accompanied" by such an affidavit.  *Id.*  "The purpose of the meet and confer requirement

is to resolve discovery matters without the court's intervention to the greatest extent possible."

*Excess Ins. Co. v. Rochdale Ins. Co.*, 2007 WL 2900217, *1 (S.D.N.Y. 2007).  "Only those matters that remain unresolved after serious attempts to reach agreement should be the subject of a motion to compel."  *Id*.

       Marseet's moving papers do not contain the required certification.  Instead, he maintains that he is not obligated to confer with RIT because "[RIT] does not deserve to waste [his] time and effort to confer with it about an issue it made."  (Docket # 89 at 4, ¶ 6(A)).  Marseet further states that any conferral with RIT's counsel likely would be unproductive.  (*Id.* at 5, ¶ 8).

       In support of its opposition, RIT has represented that the majority of the redactions protect information subject to FERPA.  As explained at length above, a party seeking disclosure of FERPA-protected information bears a higher burden "to demonstrate a genuine need for the information that outweighs the privacy interest of the students."  *Stellwag*, 2010 WL 4823355 at *1 (internal quotations omitted).  Indeed, courts routinely permit parties to redact FERPA-protected information prior to disclosure.  *See*, *e.g.*, *Doe v. Wesleyan Univ.*, 2021 WL 4704852, *8 (D. Conn. 2021) (ordering production of student disciplinary files where plaintiff agreed "to the redaction of all information that would personally identify the students in question"); *Ragusa v. Malverne Union Free Sch. Dist.*, 549 F. Supp. 2d 288, 294-95 (E.D.N.Y. 2008) (directing production of education records but requiring defendant to redact "[a]ll personally identifiable information").

       Although Marseet may be able to demonstrate that his need for the redacted information outweighs any privacy interests held by the subject of the document, the dispute is not ripe for judicial determination because Marseet has not conferred with RIT about the redactions.  *See*, *e.g.*, *Buckingham v. Lewis Gen. Tires, Inc.*, 2017 WL 975942, *6 (W.D.N.Y.

6

2017) ("[plaintiff's] failure to comply with Rule 37[(a)(1)], particularly in light of the Court's advisement [of the need to confer before filing a motion to compel], warrants denial of his motions [to compel]"); *Brown v. Clayton*, 2013 WL 1409884, *2 (D. Conn. 2013) ("[t]he failure to follow the meet and confer requirement is a sufficient basis for denying the motion to compel").  Accordingly, on this record, Marseet's motion to compel RIT to remove redactions **(Docket # 52)** is **DENIED without prejudice to renewal**.  Marseet is cautioned that he must comply with the conferral requirements of the Federal and Local Rules of Civil Procedure before filing any discovery motion and must include in any such motion the required certification outlining his conferral attempts and attaching any relevant correspondence.  **Any discovery motions that fail to comply with these rules will be stricken or dismissed by the Court**.

## III.   <u>Motion for Independent Medical Examination (Docket # 74)</u>

Marseet has filed a motion requesting that the Court issue an order to conduct independent physical and psychological examinations of Marseet pursuant to Rule 35 of the Federal Rules of Civil Procedure.  (Docket # 74).  Rule 35 generally governs requests made by one party to require another party to submit to a medical examination.  *See* Fed. R. Civ. P. 35(a); *see Smith v. Carroll*, 602 F. Supp. 2d 521, 526 (D. Del. 2009) ("Rule 35, however, does not vest the court with authority to appoint an expert to examine a party [even an indigent inmate] wishing an examination of himself").  Although Marseet has the right to hire his own expert, "no civil litigant, even an indigent one, has the legal right to [a medical examination at taxpayer expense]."  *Id.*; *accord Brown v. United States*, 74 F. App'x 611, 614 (7th Cir. 2003) (court properly denied indigent inmate's request to compel government to bear cost of hiring expert to

testify on his behalf), *cert. denied*, 540 U.S. 1132 (2004).  Accordingly, Marseet's motion for

court-ordered medical examinations of himself **(Docket # 74)** is **DENIED**.


**IV.      Motion for Electronic Filing Privileges (Docket # 129)**

Marseet has moved for a court order granting him permission to file documents

electronically through the Court's CM/ECF system.  (Docket # 129).  Marseet represents that

mailing the documents to the Court for manual docketing is too costly for him.  (*Id.*).

Rule 5 of the Federal Rules of Civil Procedure provides that a litigant proceeding

*pro se* "may file electronically only if allowed by court order or by local rule."  Fed. R. Civ. P.

5(d)(3)(B)(i).  This Court's local rules do not contain a provision permitting *pro se* litigants to

file electronically.  Nevertheless, the Court's Administrative Procedures Guide for Electronic

Filing, which is incorporated into the local rules, *see* W.D.N.Y. L. R. Civ. P. 5.1(a), permits a

judicial officer, "at his or her discretion," to "grant a *pro se* litigant who demonstrates a

willingness and capability to file documents electronically, permission to register to do so."  *See*

Administrative Procedures Guide for Electronic Filing (Oct. 2022), *available at*

https://www.nywd.uscourts.gove/rules-individual-local-federal.

Marseet has a history of filing documents containing uncivil, abusive, and

inappropriate language.  (*See*, *e.g.*, Docket ## 111; 157 at 28-29).  As a result, the Court has

directed the Clerk of the Court to file Marseet's *pro se* submissions as "Restricted," which limits

access to the documents to the parties and the Court.  (Docket ## 111, 115).  Despite this Court's

July 15, 2022 Order directing Marseet to refrain from using such language, he has continued to

do so.  (*See*, *e.g.*, Docket ## 134, 135, 137, 152, 153, 154, 155, 156).  Given Marseet's

demonstrated refusal to comply with this Court's direction that he refrain from using such

language, the Court declines to grant him permission to file documents electronically, and

Marseet's motion for permission to file documents electronically **(Docket # 129)** is **DENIED**.


**V.      Motion for Permission to Use Sensitive Depictions (Docket # 135)**

By Order dated July 8, 2022, this Court prohibited Marseet from filing with or

transmitting to the Court any materials containing nude, partially nude, or otherwise sensitive

depictions of any individuals (hereinafter referred to as "Sensitive Depictions") without prior

authorization from the Court.  (Docket # 102).  The Court's Order was prompted by Marseet's

attempt to file a partially nude image of a non-party ("Sensitive Depiction No. 1").  (*Id.*).  The

Court instructed Marseet that he must request advance permission to file any Sensitive Depiction

that he believes is relevant to his claims and explain why he believes filing it is necessary.  (*Id.*).

On November 16, 2022, Marseet filed a "notice" informing the Court that he

believes it is necessary to show certain materials to "officials from the Department of Education"

and "other witnesses."  (Docket # 135).  Although unclear from his submission, the Court

interprets Marseet's filing as a request to share Sensitive Depiction No. 1 with an "expert witness

from the U.S. Department of Education" and to use it to question deposition witnesses in this

matter.[1]  (*Id.*).  This request is denied.

As an initial matter, it is not clear whether the material Marseet seeks to disclose

is subject to the Stipulated Protective Order governing documents disclosed in this matter.

(Docket # 20).  Marseet maintains that it is not (Docket # 153 at 4), but, to the extent that it is,

---

[1]  In his reply, Marseet states that his motion concerns "any relevant evidence (Photo, Audio record, and/or Video records)" that depict a particular non-party using RIT facilities for intimate activities, which presumably includes Sensitive Depiction No. 1.  (Docket # 153 at 4).

Marseet must follow the procedures outlined in the Stipulated Protective Order before disclosing the material to others.

Marseet argues that he is entitled to disclose Sensitive Depictions in connection with this litigation, particularly during depositions or consultations with expert witnesses, because the use of Sensitive Depictions is permitted by New York Penal Law Section 245.15(3) and because the Court's July 8, 2022 Order only precluded him from filing such materials with the Court.  (Docket # 153).  As an initial matter, New York Penal Law Section 245.15 is a state criminal statute that has no bearing on whether certain evidence or documents may permissibly be used in federal civil litigation.  In other words, that the act of filing the material does not violate a New York state criminal statute does not determine the question whether a federal court must permit its use in connection with pending litigation.  In any event, it is far from clear that the filing or other use of images such as Sensitive Depiction 1 in connection with this litigation is authorized under Section 245.15.  *See Eckhart v. Fox News Network, LLC*, 2021 WL 4124616, *24 (S.D.N.Y. 2021) ("[w]hile it is true that these images were filed in conjunction with a legal proceeding, subsection (3)(b) does not grant blanket immunity for legal proceedings[]; [i]nstead, it only grants immunity for 'lawful and common practices' in legal proceedings[;] . . . [w]ithout question, filing nude or partially nude photographs of a plaintiff on a public docket is not 'common,' even in cases alleging sexual misconduct"), *reconsidered in part*, 2022 WL 4579121 (S.D.N.Y. 2022).

With respect to Marseet's interpretation of this Court's July 8 Order, he is correct that it is limited to filings with or transmissions to the Court.  (Docket # 102).  Of course, the Court has the authority to issue any order to protect individuals "from annoyance, embarrassment, oppression, or undue burden or expense" in connection with the litigation before

10

it. *See* Fed. R. Civ. P. 26(c)(1).  Considering Marseet's expressed intention to show the Sensitive

Depiction to witnesses, this Court finds good cause to require prior authorization from the Court

to do so; in the absence of such prior authorization, Marseet is prohibited from using, displaying,

transmitting, or disclosing any Sensitive Depiction to anyone in connection with this litigation.

To the extent Marseet believes that use or disclosure of a Sensitive Depiction is relevant and

necessary to litigate his claims, he must first request and obtain permission from the Court prior

to using or disclosing such material.  His request must be in writing and should not attach the

Sensitive Depiction.  The request should explain why Marseet believes that the use or disclosure

of such material is necessary to litigate his claims and why a description of the Sensitive

Depiction would be insufficient.  *See Eckhart v. Fox News Network, LLC*, 2021 WL 4124616 at

*23 ("given the highly sensitive nature of these images, . . . [it is not clear] that they were

appropriate to file on the public docket[;] . . . their relevance would have been well understood

by the [c]ourt had [defendant] simply described them[;] . . . [t]he [c]ourt does not take lightly the

profound invasion of privacy and bodily autonomy the filing of these photographs must have

caused [the plaintiff]").

　　　　　Accordingly, to the extent Marseet seeks permission to display any Sensitive

Depiction to expert or deposition witnesses in this matter, this blanket request is denied.  As an

initial matter, Marseet has not yet identified any expert witnesses in this case.  (Docket # 144 at 4

n.2).  Moreover, Marseet has not persuaded this Court that such information is relevant to the

claims in this case,[2] nor identified which potential witnesses he believes possess relevant

information about this material.  Accordingly, Marseet's motion **(Docket # 135)** is **DENIED**.

---

[2] In his reply, Marseet maintains that this Court has ruled that "the sexual misconduct of [TH] and any
question or evidence related to [TH] is relevant to the facts in the [p]laintiff's complaint."  (Docket # 153 at 5,
¶ 6(1)).  That is incorrect.  Rather, during the deposition of Mr. Yazback, the Court's law clerk indicated that certain
information relating to TH might be relevant, but only to the extent that the information was known to the

**VI.**   **RIT's Motion to Compel (Docket # 60) and**
         **Marseet's Motion for a Protective Order (Docket # 37)**

RIT filed a motion to compel Marseet to provide further responses to certain interrogatories it interposed and to produce documents in response to several of its document demands.[3]  (Docket # 60).  Although several interrogatories and requests for production are at issue in the motion, the motion raises two salient disputes.  First, RIT maintains that Marseet should be required to produce information relevant to his claims for monetary damages and any efforts by him to mitigate those damages.  (Docket ## 60-13; 94 at 5-10).  In RIT's view, that information includes Marseet's post-expulsion immigration status, income or other compensation, scholarships, and employment and educational opportunities.  (Docket # 60-13 at 9-15, 18-22).  Second, RIT maintains that Marseet should be required to produce an audio recording that is responsive to its discovery demands.  (*Id.* at 10-11, 16-17).

Marseet opposes the motion to compel and has moved for a protective order prohibiting RIT from seeking information related to his immigration status or any of his academic pursuits after his expulsion from RIT.  (Docket ## 37, 72).  According to Marseet, a protective order is warranted because RIT could use such information in an attempt to impair Marseet's immigration status and his ability to enroll in other academic programs.  (*Id.*).  Marseet also maintains that information concerning his post-RIT visa status, employment, academics, and sources of income is not relevant to any issues in this litigation because he is not

---

individuals involved in the student conduct determination and would create reason to doubt or question [TH's] testimony.  (Docket # 128-4 at 12-13).

[3] In its motion, RIT also indicated that Marseet had failed to produce documents he obtained through non-party subpoenas.  (Docket # 60-13 at 22).  Marseet has agreed to provide these documents to RIT (Docket # 72 at 26); thus, this issue appears moot.

seeking any compensatory damages for lost future income.  (Docket # 72).  Marseet also maintains that the requested audio recording is privileged.  (*Id.*).

Motions to compel are "entrusted to the sound discretion of the district court," *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir.), *cert. denied*, 531 U.S. 1015 (2000), and "[a] trial court enjoys wide discretion in its handling of pre-trial discovery," *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (citations and quotation marks omitted).  Rule 26 of the Federal Rules of Civil Procedure allows parties to obtain "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, a court "may, for good cause . . . issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  Such orders may include "forbidding the disclosure or discovery," specifying the terms of any such discovery, or "prescribing a discovery method other than the one selected by the party seeking discovery." Fed. R. Civ. P. 26(c)(1)(A), (B) and (C).  The burden is on the movant to demonstrate the "necessity for the issuance of a protective order."  *See Soule v. RSC Equip. Rental, Inc.*, 2012 WL 5060059, *3 (E.D. La. 2012).

A.   **Post-RIT Academic, Employment, Income, and Immigration Status Information: Interrogatory Nos. 1, 10, 11, 13, 25 and Document Request Nos. 15, 16, 17, and 19**

Several of RIT's written discovery demands seek information relating to Marseet's activities after he was expelled from RIT.  Specifically, RIT requests that Marseet disclose any applications for scholarships, stipends, employment or other compensation he submitted to any institution after his enrollment at RIT, any offers he received in response to those applications, and his responses to any such offers.  (Docket ## 60-4 at 7-8 (Document

Request Nos. 15-16, 19); 60-5 at 26-27, 38 (Interrogatory Nos. 10, 11, 25)).  RIT also seeks

information disclosing all sources of Marseet's income after his separation from RIT, including

his federal, state, and local tax returns.  (Docket ## 60-4 at 7-8 (Document Request No. 17); 60-5

at 28-29 (Interrogatory No. 13)).  Finally, RIT requests that Marseet disclose his post-RIT

immigration status.  (Docket ## 60-5 at 2-3 (Interrogatory No. 1); 60-13 at 9-10).

       With respect to information related to his immigration status and post-RIT

academic pursuits, Marseet maintains that a protective order[4] is warranted because he fears that

RIT may improperly use this information to his detriment, as he claims it has done in the past.

(Docket ## 37; 72 at 3-4, 6-7).  According to Marseet, after he was expelled from the university,

RIT contacted federal agencies in an attempt to have him deported.  (Docket ## 37; 72 at 6-7).

Additionally, Marseet maintains that RIT impeded his ability to pursue his academic degree by

providing false or inaccurate information to two educational institutions that had offered him

admission but later rescinded those offers.  (Docket ## 37; 72 at 3-4).

       The parties also dispute the relevancy of Marseet's immigration status, and

post-RIT employment, academic pursuits, and income sources.  RIT maintains that such

information is relevant to assess Marseet's alleged damages and whether he has attempted to

mitigate those damages.  (Docket ## 60-13, 94).  Marseet disagrees, maintaining that he is not

seeking any damages related to any future earnings.  (Docket # 72).

       In his amended initial disclosures, Marseet has itemized his damages as follows:

1.     "If the Defendant refuses to remove the      $500,000
         Illegal expulsion from the Plaintiff's Transcript"

---

[4] The Court interprets Marseet's filing as seeking a protective order precluding RIT from obtaining discovery regarding his immigration status and post-RIT academic pursuits.  (Docket # 37).  To the extent Marseet seeks an order directing RIT to "[s]top working on ending [his] life[,] directly or indirectly" (Docket # 37 at 1), such application – odd as it is – is not supported by facts warranting the requested relief.  Any motion for injunctive relief must meet the requirements of Rule 65 of the Federal Rules of Civil Procedure.

| 2. | "Attorneys Fees" | $2,500 |
|----|------------------|--------|
| 3. | "Mental, Psychological, and Emotional pain and suffering" | $500,000 |
| 4. | "Insult, Humiliation, and Destroy of Reputation" | $500,000 |
| 5. | "Attempt of Deportation/Assassination" | $500,000 |
| 6. | "Loss of PhD Scholarship from RIT" | $500,000 |

(Docket ## 60-13 at 7; 72 at 16).  Marseet contends that these damages do not include lost future earnings.  (Docket # 72 at 13-15).  Rather, he maintains that he is seeking compensation for physical and emotional harm, as well as the loss of the scholarship and salary he was receiving from RIT.  (*Id.*).

RIT interprets Marseet's revised itemized damages to seek compensation related to lost pecuniary interests, including the scholarship and salary he was receiving from RIT. (Docket # 60-13 at 13).  It argues that it is entitled to obtain discovery to determine whether Marseet has mitigated those damages through receipt of other scholarships or by seeking scholarships from other academic or governmental entities.  (*Id.*).  RIT further argues that although Marseet has produced some limited information regarding his efforts to mitigate his losses (by disclosing his attempts to obtain admission to Northeastern University and Computer Systems Institute), it is allowed to obtain complete information about his mitigation efforts. (Docket # 94 at 7-8).  Finally, RIT maintains that Marseet's itemized damages also appear to seek compensation for diminished future earnings, including damages related to his expulsion from RIT.  (*Id.* at 9).  Accordingly, RIT contends that it is entitled to explore Marseet's post-RIT employment and income or, alternatively, to obtain a waiver from Marseet of any right to damages for future compensation.  (*Id.* at 9-10).

15

Turning first to Marseet's immigration status, I agree with Marseet that it has limited relevance to the issues in this case and significant potential for serious prejudice.  "Even where it is arguable that information concerning a plaintiff's immigration status may be relevant, courts have generally held that 'the potential for prejudice far outweighs whatever minimal probative value such information would have."  *Rodriguez v. Pie of Port Jefferson Corp.*, 48 F. Supp. 3d 424, 426 (E.D.N.Y. 2014) (quoting *Flores v. Amigon*, 233 F. Supp. 2d 462, 464-65 (E.D.N.Y. 2002)).  The potential for prejudice stems from the likelihood that an "undocumented litigant forced to produce documents related to his or her immigration status will withdraw from the suit rather than produce such documents and face . . . potential deportation."  *Id.* (internal quotations and brackets omitted).  On this record, I find that Marseet is entitled to a protective order barring RIT from directly or indirectly inquiring into Marseet's immigration status.  *See Uto v. Job Site Servs., Inc.*, 269 F.R.D. 209, 211 (E.D.N.Y.) ("[a]llowing discovery of plaintiffs' immigration status would cause them embarrassment and if their status is found to be illegal would subject them to criminal charges and, possibly, deportation") (internal quotation omitted), *objections overruled by*, 2010 WL 11632756 (E.D.N.Y. 2010).

I reach the opposite conclusion with respect to the remaining information sought by RIT.  Contrary to Marseet's contention, I agree with RIT that his pleadings and discovery responses suggest that he seeks recovery for lost compensation (including salary/stipend and scholarships) that he was receiving at RIT and for future compensation related to any lost opportunity to obtain his doctoral degree.  Accordingly, information concerning his post-expulsion academic pursuits, employment, and income are relevant to Marseet's claim for backpay and mitigation of damages.  *Michelman v. Ricoh Americas Corp.*, 2013 WL 664893, *2 (E.D.N.Y. 2013) (plaintiff's earnings and sources of income are relevant in discrimination cases

16

to plaintiff's "claim for backpay and to mitigation of damages").  Moreover, given the substantial physical and mental health damages alleged by Marseet, information concerning his academic or employment success following expulsion may be relevant to assess the extent of his alleged damages.

With respect to Marseet's income tax returns, "[a]lthough income tax returns are not inherently privileged, courts are typically reluctant to compel their disclosure because of both the private nature of the sensitive information contained therein and the public interest in encouraging the filing by taxpayers of complete and accurate returns." *Kemp v. CSX Transp.*, 2020 WL 8461515, *2 (N.D.N.Y. 2020) (internal quotations omitted).  Accordingly, a party seeking to compel the disclosure of income tax returns must demonstrate that the returns are relevant to the subject matter of the action and that there is "a compelling need for the returns because the information is not otherwise readily obtainable."  *Id.* (internal quotations omitted).  RIT has not yet demonstrated that relevant information concerning Marseet's employment and income sources is not obtainable through less intrusive means.  As RIT concedes, such alternative information sources include Marseet's W-2 forms, wage statements, and 1099s.  (Docket # 94 at 9).  Marseet should be provided the opportunity to produce information from alternative sources that is sufficient to demonstrate his income and sources of income.  Accordingly, RIT's request to compel production of Marseet's income tax returns is denied at this time without prejudice to renewal.

Marseet has expressed reservations about producing personal information concerning his academic and employment pursuits, suggesting that RIT may use the information for improper purposes.  (Docket ## 37, 72).  In response, RIT has observed that Marseet may designate such information as confidential pursuant to the parties' Stipulated Protective Order.

(Docket ## 20; 58 at 6 ("[t]he parties have already entered into a Stipulated Protective Order, which protects any confidential information that is being disclosed in this case")).  I agree.  To the extent Marseet believes that any of the information he is required to produce contains confidential information, he should designate it in accordance with the provisions of the Stipulated Protective Order.  (Docket # 20).

Finally, to the extent Marseet persists in opposing production of post-expulsion information relating to his income and academic and employment applications and pursuits on the grounds that he does not seek damages for the loss of the compensation he was receiving from RIT (including salary, stipends, or scholarships) or for any future diminished or lost income (including wages, salary, scholarships), he must clearly and explicitly waive claims for such damages by executing a written stipulation.  Before doing so, he must confer with RIT concerning the form of the stipulation.  Such a stipulation would limit the scope of damages-related information Marseet would be required to disclose.  If Marseet neither produces the damages information requested, nor executes an acceptable waiver, he will be precluded from seeking damages for lost compensation.

B.    **Audio Recording (Interrogatory No. 4 and Document Request No. 12)**

RIT requested that Marseet produce statements or recordings of conversations concerning any allegations in the complaint.  (Docket ## 60-4 at 6; 60-5 at 3-4).  In response, Marseet identified and produced some statements.  (Docket # 60-5 at 4).  He also indicated that he has a recording but refused to produce it on the grounds that it was privileged.  (Docket # 60-4 at 6).

During the meet and confer process, Marseet maintained that the recording was protected by the "doctor-patient privilege" and represented that it captured a conversation

between Marseet and his psychologist.  (Docket ## 60-11 at 4; 72 at 7).  Marseet did not identify

the psychologist by name and did not provide the subject of the conversation other than to

indicate that it was "about another third party after the Plaintiff left the Defendant."  (Docket

# 60-11 at 4).  He further explained that he did not want to produce the recording because he was

not sure whether he would use the recording to support his claims in this litigation, although he

indicated he might use the recording for impeachment purposes.  (Docket # 72 at 8).  Marseet

also expressed concerns that RIT would attempt to harm the psychologist or attempt to influence

his or her testimony.  (*Id.* at 8-9).

   RIT requests an order compelling Marseet to produce the recording.  RIT

maintains that the recording is relevant to the action and responsive to its requests.  (Docket

# 60-13 at 16).  According to RIT, Marseet has not provided sufficient information to establish

that the recording is privileged.  RIT argues that, in any event, Marseet has waived any privilege

by indicating that he intends to depose the individual captured on the recording and that he may

use the recording in connection with that deposition.  (*Id.* at 16-17).  Finally, RIT maintains that

any privilege has also been waived because Marseet has placed his mental health at issue in the

litigation.  (*Id.* at 17).  In response, Marseet concedes that he has not provided RIT a privilege

log and requests that the Court consider his objection to the discovery demands in lieu of a

privilege log.[5]  (Docket # 72 at 7).

   "[I]t is well-established in this Circuit that 'the party invoking a privilege bears

the burden of establishing its applicability to the case at hand.'"  *Kiobel v. Royal Dutch*

*Petroleum Co.*, 2005 WL 1925656, *3 (S.D.N.Y. 2005) (quoting *In re Grand Jury Subpoenas*

---

[5]  The parties seemingly agree that the recording is responsive to RIT's discovery demands.  Even if the recording is not responsive to the specific document demand identified by RIT, it appears responsive to RIT's to Document Request No. 3, which seeks "[a]ll . . . recordings . . . which relate to the events referenced in the Complaint."  (Docket # 60-4 at 3).

*Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003)); *see Hibbs v. Marcum*, 2018 WL 953347, \*3 (W.D. Ky. 2018) (party asserting psychotherapist-patient privilege bears burden of establishing both the existence of the privilege and that it has not been waived); *James v. Harris Cnty.*, 237 F.R.D. 606, 609 (S.D. Tex. 2006) (requiring party asserting psychotherapist privilege to "establish both the existence of the privilege and the absence of waiver"); *Speaker ex rel. Speaker v. Cnty. of San Bernardino*, 82 F. Supp. 2d 1105, 1108 (C.D. Cal. 2000) ("the burden of proof for the psychotherapist/patient privilege is on the party seeking to establish that the privilege applies").  In order for the psychotherapist privilege to apply, the party seeking its protection must establish that the communications: (1) occurred between the individual and a licensed medical professional; (2) were made in the course of diagnosis or treatment; and (3) were made with the expectation that they would be kept confidential.  *See Doe v. Sarah Lawrence Coll.*, 2021 WL 197132, \*6 (S.D.N.Y. 2021) ("[t]he psychotherapist-patient privilege only applies to (1) confidential communications, (2) between a licensed mental health professional and his or her patients, (3) in the course of diagnosis or treatment") (emphasis omitted).

In this case, the record is insufficient to permit the Court to determine whether the recording is privileged and, if so, whether the privilege has been waived.  Indeed, the entire purpose of a privilege log is "to ensure that a withholding party can justify a privilege designation."  *In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 326 (S.D.N.Y. 2020).  As Marseet is representing himself and may not have been familiar with the privilege log requirement, the Court will provide him an opportunity to make the required showing.  In order to constitute an acceptable privilege log, Marseet must provide information sufficient to establish each element of the psychotherapist-privilege, including identifying the parties to the communication captured

by the recording and providing sufficient information concerning the subject of the communication to permit the Court to evaluate whether the communication was confidential and whether it was made in the course of diagnosis and treatment.

Even assuming that Marseet can establish that the psychotherapist-privilege protects the recording, the Court must assess whether the privilege has been waived. As argued by RIT, Marseet seeks significant emotional distress damages in this action on the grounds that RIT has caused him to suffer "severe [m]ental, [e]motional, and psychological damages[,] [which] affect [his] health and his academic performance." (Docket # 72 at 4). These allegations of severe emotional distress place Marseet's mental health at issue and may waive any privilege. *See E.E.O.C. v. Grief Brothers Corp.*, 218 F.R.D. 59, 61–62 (W.D.N.Y. 2003) (plaintiff placed his emotional condition in issue by claiming to have suffered severe depression and serious emotional distress as a result of the alleged harassment and seeking damages for costs of medical treatment); *Sidor v. Reno*, 1998 WL 164823, *2 (S.D.N.Y. 1998) (plaintiff's challenges to employer's justification for termination – that plaintiff was a danger to herself and others – placed her mental state in issue); *see Kunstler v. City of New York*, 2006 WL 2516625, *7 (S.D.N.Y. 2006) (collecting cases), *objections overruled by*, 242 F.R.D. 261 (S.D.N.Y. 2007). Nevertheless, as stated above, the record has not been sufficiently developed at this stage for the Court to render a determination as to whether the privilege even applies, much less whether it has been waived.

Marseet is advised that he may not simultaneously assert privilege to withhold the recording from production and use the recording in connection with the litigation. *See United States v. Town of Oyster Bay*, 2022 WL 34586, *3 (E.D.N.Y.) ("federal district courts, including one in this Circuit, have found that a party who stands behind its asserted . . . privilege, and

refuses to produce the opinions of its counsel, is precluded from introducing the information at trial[;] . . . [i]f a party is going to introduce . . . privileged material at trial, the opposing party must be allowed to examine the information to conduct pretrial discovery"), *objections overruled by*, 2022 WL 4485154 (E.D.N.Y. 2022).  Accordingly, in the event that Marseet successfully demonstrates that the recording is protected from disclosure on the grounds of the psychotherapist-privilege, he will be precluded from using the recording in connection with this litigation.  Stated another way, if he wishes to use the recording in discovery or at trial, he must produce it.

Accordingly, for the reasons discussed above, Marseet's motion for a protective order **(Docket # 37)** and RIT's motion to compel **(Docket # 60)** are **GRANTED in part and DENIED in part**.  Specifically, on or before **February 28, 2023**, Marseet shall supplement his responses to Interrogatory Nos. 10, 11, 13, and 25 and Document Requests Nos. 15, 16, and 19.  RIT's motion to compel further responses to Interrogatory No. 1 is denied and its motion to compel further responses to Document Request No. 17 is denied without prejudice.  With respect to Interrogatory No. 4 and Document Request No. 12, on or before **February 28, 2023**, Marseet shall either produce the recording or provide a privilege log identifying the parties to the communication captured by the recording and sufficient information concerning the subject of the communication to permit the Court to evaluate whether the communication was confidential and whether it was made in the course of diagnosis and treatment.

## VII.   Marseet's Motions to Compel and for Sanctions (Docket ## 39, 137)

Finally, I turn to Marseet's motion to compel RIT to produce additional documents in response to three sets of Requests for Production ("RFP") he propounded.  (Docket

# 39).  Specifically, Marseet seeks to compel further responses to his First Set of RFP Nos. 2, 11, 17, 20, 21, 25, 26, 27, 32, 33, 34, 36, 39, 41, 44, 45, 46 and 47, his Second Set of RFPs, and his Third Set of RFP Nos. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12.  (*Id.*).  RIT opposes the motion on the grounds that they either have produced all relevant documents responsive to the RFPs or have interposed valid objections to producing the requested documents.  (Docket # 58 at 12-34). These disputes are addressed below.

### A.  Resolved Requests (First RFP Nos. 11, 21, 33, and 46; Third RFP Nos. 5-12)

Review of the submissions suggests that the parties have resolved several of their disputes.  Specifically, in response to Marseet's motion to compel further documents in response to his First Set of RFP Nos. 11, 21, 33, and 46, and his Second Set of RFP Nos. 5-12, RIT either produced additional documents or explained that it had already produced all responsive documents and identified those documents by Bates number.  (Docket # 58 at 15-16, 18-19, 23, 29-30, 33-34).  Marseet's reply suggests that he is satisfied with RIT's responses to these RFPs. (Docket # 68 at 10, 12, 15, 23, 26).  Accordingly, that portion of his motion to compel further responses to these RFPs is denied as moot.

### B.  Requests That Have Been Fully Responded To (First RFP Nos. 2, 17, and 47)

For several of the disputed RFPs, RIT has represented that it has searched for and produced all responsive documents.  (Docket ## 58 at 12-15, 16-17, 30; 58-1 at ¶¶ 30, 37). Although Marseet disputes that RIT has fully responded, he offers no basis for his contention. (Docket # 68 at 9-11, 23).  Of course, defendants cannot be compelled to provide that which they do not possess.  *See Myers v. Dolac*, 2011 WL 4553107, *4 (W.D.N.Y. 2011) ("this [c]ourt cannot compel production of that which defendants do not possess").  On this record, that portion of Marseet's motion which seeks to compel further responses to these RFPs is denied.

## C.      Remaining Disputes (First RFP Nos. 20, 25, 26, 27, 32, 34, 36, 39, 41, 44, and 45; Second RFPs; Third RFP Nos. 3 and 4)

The remaining disputes as to the RFPs are addressed below.

### i.     First RFP No. 20

This request seeks production of the "I20 form[s] of [TH][6] from November 2018 until present."  (Docket # 58-3 at 14).  RIT objects to producing these documents on the grounds that they are not relevant to the litigation and are protected by FERPA.  (Docket # 58 at 17-18).  According to RIT, international students are required to obtain these forms, entitled "Certificate of Eligibility for Nonimmigrant Student Status," in order to study in the United States.  (*Id.* at 18 n.6).

Marseet maintains that the forms are relevant to demonstrate TH's dates of attendance.  (Docket # 39 at 11).  Although RIT has represented in a conferral letter that TH's dates of attendance were August 24, 2015 through August 13, 2019, Marseet states that he believes TH was hired by RIT after August 13, 2019.  (*Id.*).  According to Marseet, TH's dates of attendance are relevant to his discrimination claims.  (*Id.*).  Marseet maintains that despite his complaints against TH, which included violating RIT policies, disrupting the workplace, and testifying falsely against Marseet, TH was not expelled.  (*Id.* at 11-12).  Marseet contends that he was expelled based upon the complaint that TH made against him, demonstrating that RIT discriminated against him on the basis of race and national origin.[7]  (*Id.*).  Marseet further contends that FERPA does not apply and that RIT lacks any basis to deny production of the requested documents.  (Docket # 68 at 11).

---

[6] Marseet's filings are replete with inappropriate and caustic personal attacks against this individual, who is a former RIT student.  Accordingly, the Court will refer to the individual herein as "TH."

[7] Marseet suggests that these facts also demonstrate that he was discriminated against on the basis of his gender; however, his complaint does not include a gender-based discrimination claim.

As explained at length above, a party seeking disclosure of FERPA-protected information bears a higher burden "to demonstrate a genuine need for the information that outweighs the privacy interest of the students." *Stellwag*, 2010 WL 4823355 at *1 (internal quotations omitted). Marseet has not done so on this record. As an initial matter, I agree with RIT that although Marseet accused TH of misconduct, the misconduct he alleges she engaged in is not sufficiently similar to the conduct of which he was accused to render TH and Marseet comparators. *See Moore v. Am. Fed'n of State, Cnty. & Mun. Emps. Local 1095*, 2022 WL 262347, *10 (W.D.N.Y.) ("[a]n employee is similarly situated to co-employees if they . . . engaged in comparable conduct[;] [t]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical") (quotation omitted), *report and recommendation adopted by*, 2022 WL 1497959 (W.D.N.Y. 2022); *Moultrie v. N.Y.S. Dep't of Corr. & Cmty. Supervision*, 2015 WL 2151827, *3 (S.D.N.Y. 2015) ("[l]ess severe punishment for objectively less serious or qualitatively different misconduct does not raise an inference of discrimination").

In any event, RIT has not objected to providing Marseet information regarding TH's dates of attendance. I agree that providing TH's dates of attendance is sufficient to respond to Marseet's discovery request, although the information should be provided through an affidavit sworn to by an individual with personal knowledge. Accordingly, RIT shall provide Marseet an affidavit from someone with personal knowledge attesting to TH's dates of attendance and indicating whether TH was enrolled at or employed by RIT at any time after August 13, 2019.

###### ii.    First RFP No. 25

This RFP seeks production of "[a]ny and all documents relating to the complaint filed by the Plaintiff relating to Mr. Savur." (Docket # 58-3 at 16). RIT objected to this request

but, notwithstanding those objections, represented that it had conducted a good faith search and had produced all documents responsive to this demand. (Docket ## 58 at 19-20; 58-1 at ¶ 33; 58-3 at 16-17). Marseet disputes that all relevant documents have been produced, contending that relevant documents would include documents reflecting the investigation by public safety, the transcript from any disciplinary proceedings, and the outcome of the student disciplinary process. (Docket ## 39 at 13; 68 at 12-13). With respect to the specific documents identified by Marseet, RIT either must confirm that it has produced those documents and identify them by bates number or state that it has conducted a diligent search for them and determined that such documents do not or no longer exist.

### iii.  First RFP No. 26

This RFP seeks production of the academic transcript of Karthik Subramanian. (Docket # 58-3 at 17). RIT objects to producing this information on the grounds that it is not relevant and is protected by FERPA. (Docket ## 58 at 20-21; 58-3 at 17-18). Marseet counters that Subramanian is a comparator with respect to the disciplinary action taken against Marseet. (Docket ## 39 at 14; 68 at 14). According to Marseet, Subramanian was placed on academic probation but, unlike Marseet, was not expelled and was awarded a scholarship meant for Marseet. (*Id.*). RIT contends that Subramanian is not sufficiently similar to Marseet to be considered a comparator with respect to the disciplinary action taken against Marseet. (Docket # 58 at 21).

I easily conclude that Marseet has failed to establish that Subramanian is a comparator with respect to the disciplinary action taken against Marseet. As stated above, in evaluating the similarity of comparators, "[t]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's

26

cases, rather than a showing that both cases are identical." *Moore v. Am. Fed'n of State, Cnty. &*
*Mun. Emps. Local 1095*, 2022 WL 262347 at *10 (quotation omitted). In this case, the
misconduct alleged against Marseet, which included harassment, sexual harassment, disruptive
behavior, stalking, and endangering behavior, is not sufficiently similar to alleged misconduct
involving poor academic performance. Accordingly, Marseet's request to compel production of
this academic transcript is denied.

### iv.   First RFP No. 27

This RFP seeks production of "[a]ny and all documents relating to the complaint
filed by [Marseet] relating to Mr. Subramanian. Please include his academic record while he
was at RIT." (Docket # 58-3 at 18). RIT objected to this request but, notwithstanding those
objections, represented that it had conducted a good faith search and had "not located a
complaint filed by [Marseet] with respect to Mr. Subramanian." (*Id.*). In response to Marseet's
motion to compel, RIT represents that the only complaint it found relating to Subramanian was a
document drafted by Marseet in connection with proceedings before the New York State
Division of Human Rights, which has already been produced at bates number D000764. (Docket
## 58 at 22; 58-1 at ¶ 32; 58-13). In reply, Marseet states that he emailed this complaint to Tony
Yazback in November 2018. (Docket # 68 at 14). RIT is directed to search Mr. Yazback's
November 2018 emails and produce any additional responsive documents. In the event that no
additional documents are located, RIT should confirm that the search was conducted and that no
additional responsive documents were located.

### v.   First RFP No. 32

In this request, Marseet seeks production of his employment records, including
records relating to his hiring, personnel evaluations, and termination. (Docket # 58-3 at 20).

RIT maintains that it has produced all documents responsive to this demand.  (Docket ## 58 at 23; 58-1 at ¶ 33).  Marseet requests that RIT produce documents reflecting his pay rate between the fall of 2016 through the spring of 2018.  (Docket # 68 at 15).  According to Marseet, RIT produced a document reflecting his pay rate for the summer of 2018 at bates number D000414. (*Id.*).  He seeks production of similar documents for the time period preceding the summer of 2018.  (*Id.*).  RIT is directed to search for and produce documents similar to D000414 reflecting Marseet's pay rate during the period between the fall of 2016 and the spring of 2018.  In the event no additional documents are located, RIT should confirm that the search was conducted and that no additional responsive documents were located.

### vi.    First RFP No. 34

This RFP seeks "[a]ny and all documents relating to the Mental Health Task Force created by Mr. Munson in November 2019."  (Docket # 58-3 at 20).  RIT objected to this request on the grounds of relevance.  (Docket # 58 at 24).  According to RIT, Marseet was expelled from RIT in October 2018, more than one year before the development of the Mental Health Task Force.  (*Id.*).  Marseet maintains that this information is relevant to his claim that RIT failed to provide him adequate assistance to accommodate his mental health difficulties during the student conduct process.  (Docket # 68 at 15-16).  Nothing in the record suggests that the task force was created to address alleged deficiencies in the student conduct process or to address accommodations or assistance to be provided to students engaged in that process.  On this record, I agree with RIT that Marseet has failed to demonstrate the relevancy of a task force created more than one year after the student conduct process involving Marseet.

### vii.    First RFP No. 36

In this RFP, Marseet seeks copies of the audio recordings from his student

conduct hearing.  (Docket # 58-3 at 21).  RIT has objected to producing the audio recording on

privacy grounds – specifically, that it implicates the privacy rights of the student who filed a

complaint against Marseet and that the recording cannot be redacted to protect student

information.  (Docket # 58 at 25).  As a compromise, RIT has agreed to make the audio available

for Marseet's inspection and review.  (*Id.*).  RIT objects to providing a copy of the recording to

Marseet because of concerns that he may "use the audio to further his campaign to harass and

annoy RIT current and former students."  (*Id.* at 25).

Marseet maintains that he should be permitted to have the original audio

recording in order to ensure that RIT has not modified the recording in any way.  (Docket # 68 at

17).  He also insists that any concerns that he would use the recording improperly may be

addressed by producing the recording pursuant to the protections afforded by the Stipulated

Protective Order.  (*Id.* at 18).

I sustain RIT's objection to production of the original recording.  RIT must make

the original recording available for Marseet's inspection and review at a mutually agreeable time.

### viii.    First RFP No. 39

This RFP requests production of "[a]ny and all documents which reveal who

entered and exited the MABL [f]rom July 26 to August 2, 2018."  (Docket # 58-3 at 23).  RIT

objected to producing this information on the grounds that the information is protected by

FERPA and implicates privacy considerations of its current or former students.  (Docket # 58 at

25-26).  RIT also maintains that the documents are not relevant to any of the issues in this

litigation.  (*Id.*).  RIT did provide Marseet documents reflecting his movements in the MABL during the requested timeframe.  (Docket # 58-1 at ¶ 35).

Marseet seeks to compel the MABL access records of TH on July 26, 2018. (Docket # 39 at 17).  According to Marseet, the documents would demonstrate who used the research lab during this time period.  (Docket # 68 at 19).  Marseet maintains that he wants the lab access records to demonstrate that some of the statements TH provided were false.  (*Id.*).

I agree with RIT that Marseet has failed to adequately explain the purported relevance of records reflecting TH's access to the laboratory.[8]  To the extent Marseet maintains that the records would demonstrate that TH provided inaccurate testimony during the student conduct hearing, such information would be relevant only if the hearing adjudicators were aware of the false testimony prior to rendering their decision.  As RIT notes, the salient issue in this matter is whether RIT's determination to expel Marseet was made on the basis of his race, national origin, ethnicity, or disability.  *See Gilmore v. Lancer Ins. Co.*, 2010 WL 87587, *7 (E.D.N.Y. 2010) ("[t]he question in this Title VII case is not whether defendant's decision to fire plaintiff was correct but whether it was discriminatory").  Accordingly, whether and the extent to which any of the witnesses during the hearing provided false testimony is relevant only insofar the adjudicators were aware of the false information but chose to ignore it.  *See McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("[i]n a discrimination case[,] . . . we are decidedly not interested in the truth of the allegations against plaintiff[;] [w]e are interested in what *motivated* the employer") (internal quotation omitted); *Agugliaro v. Brooks Bros., Inc.*, 927 F. Supp. 741, 747 (S.D.N.Y. 1996) ("[e]ven assuming defendants were wrong in their belief that

---

[8]  In his submission, Marseet suggests that he has not fully articulated the relevancy of this information because he "does not want to show the [d]efendant everything he has against it."  (Docket # 68 at 19).  In the absence of any further explanation, however, the Court is unable to discern the relevance of the information Marseet is seeking.

plaintiff had engaged in sexual misconduct, what is significant is that they based their decision to dismiss plaintiff on that belief, and not on his age, gender, or pension status"). On this record, Marseet has failed to demonstrate that this information is relevant to his claims, let alone "to demonstrate [that he has] a genuine need for the information that outweighs the privacy interest of" TH. *See Stellwag*, 2010 WL 4823355 at *1 (internal quotations omitted).

    **ix.**    <u>**First RFP No. 41**</u>

    In this RFP, Marseet seeks production of all documents from the student conduct process relating to Marseet's complaint about TH. (Docket # 58-3 at 24). RIT objected to this request but, notwithstanding those objections, represented that it had produced "relevant documents in its possession (i.e. those that were part of [p]laintiff's conduct hearing)." (Docket ## 58 at 27; 58-3 at 24-25). Marseet disputes that all relevant documents have been produced, noting that RIT has not produced any documents relating to the complaints he made against TH. (Docket # 68 at 20-21). RIT's response is unclear whether it has searched for and produced all documents in its possession responsive to this request or whether instead it is withholding responsive documents based upon its objections. Accordingly, RIT should clarify its response to indicate whether all responsive documents have been produced.

    **x.**    <u>**First RFP No. 44**</u>

    This RFP requests production of "all communications between RIT and Northeastern University during October-November 2019 and during April 2020." (Docket # 58-3 at 25). RIT objected to this request but produced responsive documents in its possession with the exception of a single document withheld on the basis of privilege. (Docket # 58 at 28). Marseet maintains that because no privilege attaches to communications between RIT and Northeastern University, RIT should be compelled to produce the withheld document. (Docket

# 39 at 18).  The document at issue was not exchanged between Northeastern University and RIT, but between two RIT employees – Tony Yazback and Evan Thompson, who is in-house counsel for RIT.  (Docket ## 58 at 28; 58-14).  RIT further represents that the subject of the email concerns legal advice sought by Yazback.  (*Id.*).  Accordingly, I find that RIT has adequately asserted that the document is privileged.

Marseet also seeks to compel RIT to produce transcripts of phone calls involving Northeastern University personnel and Evans or Yazback.  (Docket # 68 at 22).  Nothing in the record suggests that these transcripts exist but were not produced by RIT.  RIT should nonetheless confirm that, apart from the one privileged email, it has produced all responsive documents in its possession, including any transcripts.

### xi.    First RFP No. 45 and Motion for Sanctions (Docket # 137)

In this RFP, Marseet seeks production of all "communications between Tony Yazback and a former Monroe County Office of Mental Health Chief of Clinical Forensic Services 'Kim Butler.'"  (Docket # 58-3 at 45).  Initially, RIT objected to this request but represented that it had no responsive documents in its possession.  (Docket # 58 at 28). Subsequently, RIT located one responsive documents and produced it to Marseet.  (*Id.*).  The document contained an email string between Yazback and Kim Butler dated December 13, 2019 and December 20, 2019.  (Docket # 58-13 at 9-10).  The initial communication is from Butler on December 13, 2019.  (*Id.*).  In the communication, she requests a photograph of Marseet.  (*Id.*). Yazback responded that day, and the communication suggests that he attached a photograph of Marseet.  (*Id.*).  Butler responded to Yazback a few days later, on December 20, 2019, and inquired whether Yazback had met with Marseet.  (*Id.*).

32

Marseet maintains that RIT should be compelled to produce the photograph. (Docket # 68 at 22). He subsequently filed a submission, which the Court interpreted as a motion seeking sanctions against RIT for their failure to produce the photograph. (Docket ## 137, 142). In his reply submission, Marseet clarified that the subsequent filing was not intended as another motion, but rather a supplemental filing in support of his motion to compel.[9] (Docket # 154 at 2).

RIT maintains that the photograph is not relevant or proportional to the needs of this case because it is not disputed that Yazback sent a photograph to Butler. (Docket ## 58 at 28-29; 145 at 5 n.2).[10] In any event, RIT represents that it has conducted a good faith search for the photograph and has not been able to locate it. (Docket ## 58 at 29; 145 at 5). Marseet maintains that RIT's representation is false because "the [p]laintiff's [p]hoto that had been attached in the email can't be removed from the email," and he seeks sanctions against RIT based upon this alleged misrepresentation. (Docket ## 68 at 22; 137 at 3).

Although Marseet contends that it is impossible to remove an attachment from an email, it is clear that the document produced by RIT is not the original email sent from Yazback to Butler with the attachment, but rather is an email containing Butler's response. It is possible that Butler removed the attachment when she responded to Yazback. Even assuming the photograph has some minimal relevance to the claims at issue in this litigation, which is far from clear, nothing in the record suggests that RIT has misrepresented its ability to locate the

---

[9]  As this Court has previously advised Marseet, sur-replies are prohibited absent leave of the Court. (Docket # 96 (citing W.D.N.Y. Loc. R. Civ. P. 7(a)(6)).

[10]  In several of its filings, RIT argues that Marseet's recent filings warrant the imposition of sanctions on the grounds that they are either frivolous, repetitive, or violate previous Court orders. (Docket ## 145 4-8; 146 at 8-9; 147). To the extent RIT seeks sanctions against Marseet, it must file a formal motion seeking affirmative relief.

photographic attachment.  Accordingly, I find that RIT has adequately responded to this document request.

### xii.   Second Set of RFPs

This set of RFPs contains eight demands that seek documents reflecting compensation paid by RIT to eight other students.  (Docket # 58-9 at 5-11).  These students are Celal Savur, Shitij Kumar, Karthik Subramanian, Sulabh Kurnra, Sarthak Arora, TH, Ruslan Dautov, and Darshan Bhanushai.  (*Id.*).  RIT objected and refused to produce any responsive documents.  (*Id.*).  Marseet argues that the documents are relevant to demonstrate that RIT discriminated against him by paying him at a lower rate than other students.  (Docket # 39 at 20).  RIT counters that Marseet has failed to demonstrate that these students are comparators to Marseet.  (Docket ## 58 at 30-31; 58-1 at ¶ 39).  Specifically, RIT maintains that several of the students were enrolled in different programs and had different supervisors.  (Docket # 58-1 at ¶ 39).  RIT also contends that the records Marseet seeks are protected by FERPA and are not relevant because they relate to time periods after his expulsion.  (Docket # 58 at 30-31).  RIT represents that it attempted to confer with Marseet in an attempt to narrow his requests but has not succeeded.  (*Id.*).

"A plaintiff relying on disparate treatment evidence must show []he was similarly situated in all material respects to the individuals with whom []he seeks to compare [him]self." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003).  In order to be an appropriate comparator, "the other individual must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination."  *Bagley v. Yale Univ.*, 2015 WL 8750901, *2 (D. Conn. 2015) (internal quotations omitted); *see also Berube v. Great Atl. & Pac. Tea Co.*, 348 F. App'x 684, 686 (2d

Cir. 2009) (summary order) ("[e]mployees used as comparators in such an analysis need not be identically situated, but only must be similarly situated in all material respects").

RIT does not seriously dispute, nor could it, that Marseet is entitled to discovery of compensation information for comparator students in order to raise an inference of discrimination by demonstrating that he was paid less than similarly-situated comparators outside of his protected class. The particular dispute here concerns whether any of the eight identified students are similarly situated to Marseet such that differences in pay rate may raise an inference of discrimination by RIT. The parties have not provided the Court with adequate information to permit the Court to make that assessment. RIT maintains that many of the students were in different departments and had different supervisors. Of course, whether individuals work within the same department or have the same supervisor may be an important factor, particularly in cases involving workplace misconduct, *see Conway v. Microsoft Corp.*, 414 F. Supp. 2d 450, 465 (S.D.N.Y. 2006) ("[i]n the Second Circuit, whether or not co-employees report to the same supervisor is an important factor in determining whether two employees are subject to the same workplace standards for purposes of finding them similarly situated"). Where the claim involves disparate pay, employees are considered similarly situated where they share characteristics typically expected to affect their rate of pay, *see Simpson v. Metro-North Commuter R.R.*, 2006 WL 2056366, *7 (S.D.N.Y. 2006) ("to be 'similarly situated,' employees must be substantially similar as to specific work duties, education, seniority, and performance history, all of which affect an employee's rate of pay"). The parties need to confer in an attempt to identify which students are appropriate comparators.

Regarding RIT's overbreadth objection, I agree with RIT that documents reflecting compensation after Marseet was expelled are not relevant. With respect to RIT's

FERPA objection, although students' compensation records are undoubtedly private and confidential, I find that Marseet's need for comparator information outweighs the privacy interests of the students involved.  *See Doe v. Yale Univ.*, 564 F. Supp. 3d at 21 ("[plaintiff] would find it impossible to prove his claims unless he [obtained the requested discovery][;] FERPA does not operate to preclude [plaintiff] from seeking that information") (internal quotations omitted); *Stellwag*, 2010 WL 4823355 at *1 ("the court finds that plaintiffs have met the higher burden imposed by [FERPA][;] [b]ased on the plaintiffs' theory of the case, the disclosure of a limited number of student disciplinary files for comparison purposes is necessary to the plaintiffs' prosecution of the case").  Of course, the documents should be produced as confidential pursuant to the Stipulated Protective Order, and RIT should redact personal non-relevant information from the produced documents.  *See Doe v. Wesleyan Univ.*, 2021 WL 4704852 at *8 ("[plaintiff] does not object to the redaction of all information that would personally identify the students in question"); *Craig v. Yale Univ. Sch. of Med.*, 2012 WL 1579484, *2 (D. Conn. 2012) ("disclosure of these files shall be governed by an appropriate protective order"); *Ragusa v. Malverne Union Free Sch. Dist.*, 549 F. Supp. 2d at 293 ("[i]n order to temper the privacy concerns raised under FERPA, all the requested education records sought here must be produced in redacted form and subject to a protective order").  Moreover, RIT should comply with any and all of its FERPA-related obligations to notify the comparator students.  *See Craig v. Yale Univ. Sch. of Med.*, 2012 WL 1579484 at *2 (requiring prior notice to former residents); *Stellwag*, 2010 WL 4823355 at *1 & n.1 (recognizing that FERPA may not apply to documents with all personally identifying information redacted).  Accordingly, the parties are directed to confer and identify the relevant comparators; RIT should then supplement its response to this request.

### xiii.   **Third RFP No. 3**

This demand seeks the "access record[s]" of Celal Savur to a specific research lab at RIT on January 25, 2018, between the hours of 5:00 and 9:00 p.m.  (Docket # 58-9 at 12). Similar to Marseet's request for access records for TH discussed above, RIT objects to producing this information on the grounds that it is not relevant and is protected by FERPA.  (Docket # 58 at 32).  Marseet maintains the information is relevant to demonstrate that he "was professional" and that Savur excluded Marseet from work on the basis of Marseet's gender.  (Docket # 39 at 22).  Of course, Marseet's complaint does not contain a claim for gender discrimination. Marseet also contends that this information will demonstrate the falsity of the allegations that he was disruptive in the workplace.  (Docket # 68 at 25).  As stated above, the truth or falsity of the student conduct allegations against Marseet are relevant only insofar as the adjudicators were aware that some or all of the information was false but chose to ignore it.  Accordingly, the Court agrees with RIT that Marseet has failed to demonstrate the relevance of this information, let alone "to demonstrate [that he has] a genuine need for the information that outweighs the privacy interest of" Savur.  *See Stellwag*, 2010 WL 4823355 at *1 (internal quotations omitted).

### xiv.   **Third RFP No. 4**

This RFP seeks production of "[a]ll documents including police investigation reports with the Defendant related to the suicid[e] of a former student at RIT between September 14th and November 30th of 2018."  (Docket # 58-9 at 13).  RIT has objected to production of this information on the grounds that it seeks irrelevant and FERPA-protected information.  (Docket # 58 at 32-33).  According to RIT, the request seeks documents relating to an incident that occurred after Marseet was expelled from the university.  (*Id.*).  Marseet maintains that the information is relevant to demonstrate that RIT was negligent in addressing the needs of its

students with mental health impairments and therefore would support his claim that he was not provided adequate assistance in connection with the student conduct process.  (Docket ## 39 at 22; 68 at 25-26).  The Court agrees with RIT that the requested documents are not relevant to the claims in this litigation.

## CONCLUSION

For the reasons stated above, Marseet's motion to compel **(Docket # 39)** is **GRANTED in part and DENIED in part**, and Marseet's motions seeking a variety of other relief **(Docket ## 52, 74, 123, 129, 135, 137)** are **DENIED**.  RIT should promptly confer with Marseet and, on or before **February 28, 2023**, RIT must supplement its responses to Marseet's First Set of Requests for Production No. 20, 25, 27, 32, 41, 44, and Marseet's Second Set of Requests for Production Nos. 1-8, as specified above.

RIT's motion to compel **(Docket # 60)** and Marseet's motion for a protective order **(Docket # 37)** are **GRANTED in part and DENIED in part**.  Specifically, on or before **February 28, 2023**, Marseet shall supplement his responses to Interrogatory Nos. 10, 11, 13, and 25 and Document Requests Nos. 15, 16, and 19.  RIT's motion to compel further responses to Interrogatory No. 1 is denied, and its motion to compel further responses to Document Request No. 17 is denied without prejudice.  With respect to Interrogatory No. 4 and Document Request No. 12, on or before **February 28, 2023**, Marseet shall either produce the recording or provide a privilege log identifying the parties to the communication captured by the recording and sufficient information concerning the subject of the communication to permit the Court to evaluate whether the communication was confidential and whether it was made in the course of diagnosis and treatment.

By Order dated November 21, 2022, the Court stayed the deadlines in its Scheduling Order (Docket # 118) pending determination of the numerous motions before the Court (Docket # 141). The Court also directed that the parties refrain from filing further motions or requests for relief until it had rendered a decision on the motion to amend. (*Id.*). This Decision and Order resolves all remaining motions pending before the Court. Accordingly, the parties are no longer prohibited from filing any appropriate motions or requests for relief.

The parties are reminded that they must comply with the Local Rules of Civil Procedure, which limit the permissible filings in support of a motion to an opening submission, an opposition submission, and, if requested by the movant, a single reply. *See* W.D.N.Y. Loc. R. Civ. P. 5.2 and 7 (replies permitted only if "the moving party has stated an intent to reply"). Submissions should not be supplemented by letters or other filings absent express leave from the Court. *See* W.D.N.Y. Loc. R. Civ. P. 7(a)(6) ("[a]bsent permission of the [j]udge hearing the motion, sur-reply papers are not permitted"). Moreover, the parties must not file multiple motions seeking the same relief, and all submissions must comply with the page limits and form requirements of the Local Rules, which direct that submissions use at least 12-point font, double spacing, and contain one-inch margins on all sides. *See* W.D.N.Y. Loc. R. Civ. P. 10. In addition, any discovery motion must include the required certification outlining the parties' conferral attempts and attaching any relevant correspondence. Finally, all filings must be free of uncivil, offensive, and abusive language.

The parties are directed to confer and submit to this Court a jointly-proposed scheduling order on or before **February 14, 2023**.

**IT IS SO ORDERED.**

_s/Marian W. Payson_
MARIAN W. PAYSON
United States Magistrate Judge

Dated:  Rochester, New York
         January 30, 2023