UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AKRAM MARSEET,

                              Plaintiff,                    DECISION & ORDER and
                                                           REPORT & RECOMMENDATION

              v.                                           20-CV-7096FPG

ROCHESTER INSTITUTE OF
TECHNOLOGY, et al.,

                              Defendants.
_____

## PRELIMINARY STATEMENT

Currently pending before this Court are numerous motions filed by plaintiff Akram Marseet ("Marseet").  (Docket ## 165, 166, 184, 192, 193, 194, 195, 196).  Also pending is a motion by defendant Rochester Institute of Technology ("RIT") requesting an extension of time to respond to one of Marseet's motions.  (Docket # 185).

## REPORT & RECOMMENDATION

"[C]ourts are 'vested, by their very creation, with power to impose silence, respect, and decorum[ ] in their presence, and submission to their lawful mandates.'"  *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 367 (2d Cir. 2021) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)).  "[T]his power is not conferred by rule or statute[,] . . . [but] [r]ather "it springs from the nature of the judicial institution . . . and enables courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Id.* (internal quotation omitted).  "This Court has the power, pursuant to the All Writs Act, 28 U.S.C.

§ 1651, to issue an injunction limiting vexatious litigation." *See Houghtaling v. Downes*, 623 F.

Supp. 3d 145, 164 (W.D.N.Y. 2022); *Pina v. United States*, 2022 WL 18046792, *4 (S.D.N.Y.)

("[a] court may, in its discretion, impose a filing injunction (sometimes called 'leave-to-file

sanctions') when confronted with a 'demonstrated history of frivolous and vexatious litigation'")

(quoting *George v. N.Y.S. Div. of Parole*, 685 F. App'x 30, 30 (2d Cir. 2017) (summary order)),

*report and recommendation adopted by*, 2022 WL 17959469 (S.D.N.Y. 2022).  Although a court

must first provide a litigant with notice and an opportunity to be heard prior to issuing a filing

injunction, "[t]hat notice may take the form of a magistrate's judge's report and

recommendation." *Pina v. United States*, 2022 WL 18046792 at *4.

In deciding whether to restrict a litigant's ability to make future filings, the

Second Circuit has enumerated the following five factors to be considered:

(1)     the litigant's history of litigation and in particular whether
it entailed vexatious, harassing or duplicative lawsuits;

(2)     the litigant's motive in pursuing the litigation, *e.g.*, does the
litigant have an objective good faith expectation of
prevailing[ ];

(3)     whether the litigant is represented by counsel;

(4)     whether the litigant has caused needless expense to other
parties or has posed an unnecessary burden on the courts
and their personnel; and

(5)     whether other sanctions would be adequate to protect the
courts and other parties.

*See Houghtaling v. Downes*, 623 F. Supp. 3d at 164 (*quoting Iwachiw v. N.Y.S. Dep't of Motor*

*Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005)).  Having considered the relevant factors and for the

reasons that follow, I recommend that the district court impose a filing injunction enjoining

Marseet from making any future filings without first obtaining Court permission.

Initially represented by counsel, Marseet began litigating this case *pro se* in March 2022.  (Docket # 30).  Since that time, Marseet has filed approximately forty-five submissions seeking a variety of relief from the Court.  (Docket ## 32, 37, 38, 39, 40, 41, 42, 52, 54, 55, 73, 74, 83, 99, 100, 101, 112, 113, 123, 129, 130, 131, 133, 134, 135, 136, 137, 138, 139, 140, 149, 165, 166, 170, 172, 175, 176, 179, 184, 185, 192, 193, 194, 195, 196).  Many of these filings were repetitive, vexatious, and frivolous.  (*See*, *e.g.*, Docket # 157 at 28 ("[m]any of the motions filed by Marseet seek the same relief, and many include multiple filings that conflate or refer to issues raised in other pending motions, which only complicates the task of identifying the precise issues pending before the Court and results in unnecessary delay resolving the issues")).  More troubling, Marseet's filings are rife with caustic, inflammatory, offensive, and baseless accusations against the defendant, defendant's counsel, this Court, and its staff.  Indeed, Marseet's inappropriate and uncivil language and conduct has been the subject of several orders issued by this Court.  (*See*, *e.g.*, Docket ## 111, 157, 173).

Marseet has been warned repeatedly to avoid the use of such intemperate language in his filings and his communications with the Court and opposing counsel. Approximately one month after he began representing himself in this action, the Court was requested by defendant's counsel to address with Marseet his "offensive and threatening" language.  (Docket # 111 at 1-2).  At that time, the Court counseled Marseet that litigants are required to be courteous and civil to each other and admonished him to refrain from directing inappropriate, inflammatory, or abusive language at RIT or its counsel.  (*Id.* at 2).  Among other things, the Court explained to Marseet that he was not permitted to refer to defendant or opposing counsel as "liars," "killers," or "terrorists."  (*Id.*).

Undeterred, Marseet continued to resort to abusive language and *ad hominem* attacks in his filings and communications. Examples included accusing RIT and its counsel of lacking honesty, "hunting in the dirty water," lying, cheating, engaging in malicious and unprofessional behavior, and attempting to assassinate Marseet or end his life. (*See generally* Docket ## 48, 50, 51). In addition, Marseet questioned how defendant's counsel obtained her degree to practice law and suggested that she return to law school after she first "stud[ies] morals." (Docket # 50 at 23, 25). He also referred to witnesses whom he desired to depose as being "cheap," dirty," "filthy," and lacking in morals, and accused them of being "liar[s]," "slaves," "adulter[ers]," and "criminal[s]." (*See generally* Docket ## 48, 50, 51).

Marseet suggested that his continued use of such language was justified, maintaining it merely represented his "[n]atural [r]eaction[]" and that he had the right to use "the words he [saw] fit to the value and malicious behavior of [RIT] and its [d]uly [l]icensed attorney." (Docket ## 50 at 16; 51 at 2; *see also* Docket # 51 at 1 ("[p]laintiff preserves his right to respond to [counsel's] abusive statements by the appropriate words")). To address Marseet's ongoing conduct, on July 15, 2022, this Court issued a written order directing that Marseet "immediately cease using inappropriate and abusive language and refrain from offensive and *ad hominem* attacks to and about RIT's counsel, potential witnesses, and this Court in his filings and communications." (Docket # 111 at 5). The Court declined to strike Marseet's offensive filings at that time, although it did direct the Clerk of the Court to place Marseet's filings under seal on the electronic docket pending further review by the Court. (*Id.* at 3). The Court further warned Marseet that his failure to abide by the Court's direction could result "in the imposition of sanctions, which [could] include the striking of any noncompliant submissions, the imposition of monetary sanctions, the closing of discovery, or even dismissal of his complaint." (*Id.* at 4, 5).

Considering Marseet's uncivil behavior, the Court directed that the initial deposition in this matter be supervised and assigned its law clerk, Christin M. Cornetta, Esq., to do so. (*Id.* at 4-5). The deposition of Tony Yazback was completed by video on September 7, 2022. (Docket # 157 at 1). The Court thereafter reviewed the transcript, finding that it demonstrated "that throughout the deposition Marseet engaged in uncivil, discourteous, inflammatory, and abusive conduct that violated the basic rules and expectations of civility applicable to depositions, as well as this Court's July 15, 2022 Order explicitly directing Marseet to refrain from the use of abusive language in connection with this litigation." (Docket # 157 at 9). The Court found that Marseet's conduct continued throughout the entire deposition, despite being repeatedly advised by Cornetta that the conduct was improper. (*Id.* at 11). In the Court's view, the transcript demonstrated that Marseet's interactions with Cornetta were "at times disrespectful and uncivil," and included interruptions, argumentative discourse, and accusations of collusion and bias. As a result, the Court granted in part RIT's motion for a protective order and precluded Marseet from conducting additional oral depositions. (*Id.* at 14).

In its Decision & Order, which also denied Marseet's motion for this Court's recusal, the Court again noted that Marseet persisted in the use in his filings of uncivil, abusive, and offensive language regarding the defendant, its counsel, and non-parties. (*Id.* at 28). Such language included repeatedly accusing individuals of lying and attempting to assassinate Marseet and suggesting that Marseet would withdraw his complaint if RIT's counsel appeared in public partially unclothed. (*Id.* at 28-29). Additionally, the Court noted that Marseet's filings attempted to justify the use of such language and intimated that he would continue to do so despite this Court's orders. (*Id.* at 29). The Court again cautioned Marseet that continued use of such language in violation of the Court's orders risked the striking of his filings and the

imposition of sanctions, which could "include the imposition of monetary sanctions, the closing of discovery, or the dismissal of the complaint." (*Id.*).

On March 23, 2023, Marseet filed a motion requesting that the Court issue a subpoena *duces tecum* to a non-party. (Docket ## 170, 171). In his submission, Marseet accused the Court of lying, being racist, dishonest, and revengeful, having "evil intention against the [p]laintiff" and colluding with RIT. (*See generally id.*). Additionally, Marseet demanded that the Court "submit her resignation from the Judicial System because of her shameless and bold[ ] Judicial Misconduct." (Docket # 170 at 14). Moreover, Marseet threatened to continue to refer to this Court as "Liar Judge Payson." (*Id.* at 8; *see also id.* at 14 ("[i]f Judge Marian W. Payson does not provide evidence showing that [p]laintiff said [d]efendant counsel is a terrorist, first, [p]laintiff will call this Judge as Liar, second, [p]laintiff will sue this Judge")). On March 27, 2023, this Court issued an Order directing that the Clerk strike Marseet's filings because they violated this Court's previous orders. (Docket # 173).

On June 14, 2023, Marseet filed several more submissions seeking a variety of relief, which are currently pending. (Docket ## 193, 194, 195, 196). In addition to baselessly seeking reconsideration of this Court's prior orders (Docket ## 193, 194, 196), Marseet again resorts to wholly inappropriate and intemperate arguments, including accusations of unethical and unprofessional behavior by the Court, its staff, opposing counsel, and other individuals involved in this litigation. The filings, which primarily rehash earlier arguments, evidence Marseet's continued refusal to accept unfavorable rulings from the Court and his continued insistence that any determination with which he does not agree demonstrates this Court's "bias" against him. Once again, his filings are replete with allegations against the Court of dishonesty,

collusion, corruption, and of being unqualified to hold judicial office.[1] (*See, e.g.*, Docket # 193 at 2 ("[t]he [s]evere [j]udicial misconduct[ ] by the Federal Magistrate Judge Marian Payson [is] rude, unprofessional, inappropriate, offensive, abusive, and is considered as a collusion with the [d]efendant against the [p]laintiff"), at 16 ("[i]t is clear that the Federal Magistrate Judge Marian Payson is colluding with the [d]efendant against the [p]laintiff[,] . . . [and] is not qualified to be a [j]udge"). Additionally, Marseet accuses parties and witnesses of lying, manipulating, colluding, committing perjury,[2] and attempting to assassinate him or end his life. (Docket ## 193, 194, 195, 196). He contends that this Court's decision to limit him to depositions upon written

---

[1] This is not the first instance of Marseet's baseless accusations of bias and misconduct against the Court. In a previous filing, Marseet sought recusal on the grounds that this Court had delayed resolving his pending motions and had demonstrated bias in favor of RIT and against him. (Docket # 101). He requested that "a [m]ale [j]udge" be assigned to the case "because all the women who [are] involved in [Marseet's] cases [have] conspired against [him]." (*Id.* at 5). In supplemental submissions, Marseet accused this Court of "colluding with [RIT] against [him], discriminating against [him], . . . behaving maliciously" and issuing "adverse and revenge orders." (Docket ## 105 at 1; 122 at 13-17). Marseet's current filings suggest that he continues to seek this Court's recusal. (Docket ## 193 at 19 ("the Court must remove this Judge and investigate about her [s]evere [j]udicial [m]isconduct"); 196 at 17 ("Judge Payson must report to Judge Frank P. Geraci, Jr[.,] that she has engaged in [s]evere [j]udicial misconduct against the [p]laintiff and in [c]ollusion with the [d]efendant")). As Judge Geraci previously explained to Marseet, "a motion seeking recusal of a magistrate judge should be brought 'before the magistrate judge in the first instance.'" (Docket # 143 (quoting *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 794 (2d Cir. 2002)). I have already considered and denied Marseet's request that I recuse myself. (Docket # 157). To the extent Marseet disagreed with my determination, the proper course would have been to file objections to it. Marseet's current submissions, although citing to more recent determinations issued by the Court, merely repeat his baseless accusations that unfavorable determinations issued by the Court demonstrate its bias against him. Accordingly, for the reasons explained in my previous determination (Docket # 157), Marseet has failed to offer any grounds upon which recusal is justified.

[2] For instance, Marseet devotes an entire thirty-page filing to leveling accusations of perjury against the deponent in the supervised deposition and demanding that the Court institute criminal charges against the deponent. (Docket # 195). Review of the filing and deposition transcript demonstrates little more than Marseet's disagreement with the deponent's factual answers. For example, Marseet asked the deponent to admit that another student had engaged in misconduct inside one of RIT's research laboratories. (Docket # 128-4 at 13, 19). In response, the deponent indicated although Marseet had reported the alleged conduct and provided photographs, the deponent did not believe that the photographs demonstrated that the alleged misconduct had occurred in the laboratory or that the depicted conduct necessarily violated RIT policies. (*Compare* Docket # 195 at 4-11 *with* Docket # 128-4 at 14, 16, 19 ("[y]ou did not provide any information or evidence that anything like that occurred in the MABL lab"), 22, 26, 194-95 ("I'm not sure – it's not – it's not sexual misconduct"). At other times, Marseet accuses the witness of perjury for answering that he did not recall certain information or providing answers based upon his own personal beliefs. (*See, e.g.*, Docket # 195 at 11 ("[a]nother [p]erjury by [d]eponent . . . is the following false answer: 'I believe that [TH] is an honest person"); at 18 ("[d]eponent . . . committed the crime of [p]erjury when he claimed that he did not remember")). Of course, "[t]he fact that [the deponent] disagree[s] with [Marseet], or that [the deponent] do[es] not remember the incident the way [Marseet] does, does not mean that [he] is lying under oath." *Braithwaite v. Bille*, 2020 WL 4934586, *7 (E.D. Wis. 2020) ("[i]t is not the court's job, or even the plaintiff's, to decide whose version of events is the most credible[;] [t]hat is the jury's job").

questions is based – not upon his inappropriate conduct – but upon the Court's desire to prevent Marseet from obtaining relevant information.  (Docket # 195 at 4; *see also* Docket # 194 at 5 ("[t]he goal of preventing the [p]laintiff from taking deposition[s] of witnesses by oral examination is to prevent the [p]laintiff from obtaining more information and to allow the [d]efendant to provide false answers")).  These filings plainly violate this Court's previous orders, and the Clerk of the Court is directed to strike them from the electronic docket.

Marseet's uncivil behavior is not limited to his filings; rather, it permeates his communications in this litigation.  For example, on February 3, 2023, Cornetta emailed RIT's counsel regarding an administrative matter and copied Marseet on the communication.  Although the communication was not directed to him, Marseet replied and accused Cornetta of "not [being] honest and . . . neutral" during Yazback's deposition, indicated that he did not wish to "deal with such unfair and [d]ishonest" people like Cornetta, and requested that she refrain from emailing or copying him on any future emails.  In response, the Court advised Marseet that his communication was inappropriate, cautioned him again that his continued uncivil communications risked sanctions, and directed that he was not to communicate with Court staff in such a manner.[3]  Days ago, on June 26, 2023, Marseet emailed this Court regarding his recently filed motions.  In the email, Marseet complained that the Court had not issued scheduling orders setting briefing deadlines on his requests for relief.[4]  In the email, he accused

---

[3]  In his responsive email, Marseet accused the Court of judicial misconduct, colluding with the defendant, and "exploiting [his] mental disability."

[4]  It is the Court's practice to issue motion scheduling orders where this Court believes that further briefing by the parties will assist the Court in resolving the dispute.  As the Court has previously advised the parties (Docket # 142), at times the Court determines that further submissions are unnecessary.  In those instances, the Court does not issue a motion scheduling order.  Of course, pursuant to applicable local rules, the non-moving party may still submit a response to the requested relief.  *See* W.D.N.Y. Loc. R. Civ. P. 7(b)(2).  In the event the movant has reserved the right to reply, the local rules also permit a reply submission, but only if the non-movant has submitted a response.

the Court of discriminating against him in a manner that was "rude, inappropriate, unprofessional, uncivil, abusive, and filthy."

As this Court has previously acknowledged, "litigation can be stressful and frustrating, particularly for *pro se* litigants." (Docket # 111 at 3). Nevertheless, "[t]he fact that plaintiff is *pro se* does not protect [him] from the imposition of sanctions when necessary and appropriate to deter baseless filings." *Collins v. Cheney*, 2007 WL 4300025, *3 (W.D.N.Y. 2007). Further, although Marseet "is certainly entitled to challenge the legal and factual positions taken by [d]efendant, . . . he may not engage in the type of inflammatory name-calling of defense counsel [and other witnesses] that has littered his filings." *Houghtaling v. Eaton*, 559 F. Supp. 3d 164, 170 (W.D.N.Y. 2021). Similarly, although plaintiff is permitted to challenge this Court's determinations, *see Immerso v. U.S. Dep't of Labor*, 2021 WL 3185531, *5 (E.D.N.Y. 2021) ("[n]or, as a general matter, does the court consider isolated, well supported requests that it reconsider key aspects of prior rulings to be frivolous or vexatious"), or to assert factually-grounded accusations of bias, *see Koehl v. Bernstein*, 740 F.3d 860, 863 (2d Cir. 2014) ("[a]sserting that a judicial officer is biased against a party as a basis for a demand for the officer's recusal or disqualification is ordinarily, without more, not sanctionable conduct"), Marseet is not permitted to abusively and offensively denigrate the Court or level baseless accusations of impropriety against it simply because he receives determinations with which he disagrees, *see id.* at 863 ("the right to accuse a judge of bias (or of misconduct) does not carry with it the right to abuse and insult"); *Immerso v. U.S. Dep't of Labor*, 2021 WL 3185531 at *5 ("[h]is baseless accusations not only disrespect opposing counsel and this court; they also infect this litigation with a dangerous and alarmingly prominent kind of discourse, notable for the kneejerk tendency to malign one's adversary or a decisionmaker with whom one disagrees as

criminal or corrupt, that undermines public faith in the judicial process and destabilizes the rule of law[;] [s]uch discourse in this court is impermissible, and this court will not tolerate it further"). "While the Court is cognizant that [p]laintiff wants and is entitled to represent himself zealously, he is also subject to the rules of decorum of this Court." *Houghtaling v. Eaton*, 559 F. Supp. 3d at 170.

Despite being provided consistently with adequate notice that his abusive filings and communications violate applicable rules of civility, Marseet's improper conduct has not abated. The Court's determination to strike his prior submissions has not deterred him. On this record, I recommend that the district court impose a filing injunction that requires Marseet to obtain permission from the Court before making any motion or filing by submitting a copy of the proposed submission and a one-page letter showing cause why the submission should be accepted. *See Castellaw v. Excelsior Coll.*, 2021 WL 3046748, *4 (E.D.N.Y. 2021) (collecting cases). Marseet should be cautioned to avoid seeking authorization for repetitive or frivolous motions and reminded to comply with the Court's Local Rules governing motion practice. Moreover, he should be warned that continued violations of this Court's orders may result in the imposition of sanctions, which may include the imposition of monetary sanctions, the closing of discovery, or the dismissal of the complaint.

## DECISION & ORDER

I turn next to the remaining motions pending before the Court.[5] (Docket ## 165, 166, 184, 185, 192). One pending motion has not been fully briefed and is not addressed herein. (*See* Docket ## 187, 197).

---

[5] Several of Marseet's filings in connection with these motions contain the same offensive and abusive language as he used in his stricken filings. (*See*, *e.g.*, Docket ## 165, 166, 181, 182, 184). For instance, Marseet

I.      **Motion for Protective Order (Docket # 166)**

Marseet seeks a protective order precluding RIT from conducting an oral deposition of him and limiting his deposition to one by written questions.  Marseet also requests an order limiting any deposition questions to facts outlined in his complaint, interrogatory responses, and his other filings.  (Docket # 166).  According to Marseet, a protective order is warranted due to his impaired mental and physical health.  (*Id.*).

Marseet maintains that his medical impairments inhibit his ability to comprehend oral discourse quickly and at times cause him to suffer physical and mental symptoms, including mental paralysis, loss of control of his limbs, crying spells, increased heart rate, severe headaches, difficulty breathing, loss of sensation, and inability to talk.  (*Id.*).  According to Marseet, due to his medical conditions, he will require significant time to understand and respond to RIT's questions.  (*Id.*).  In support of these contentions, Marseet has submitted medical records demonstrating that he takes several prescription medications, which he states he has been taking since 2018, and medical appointment confirmations, which suggest that he regularly treats with a mental health provider.  (Docket ## 165 at 2; 165-1; 165-2; 165-3).

In connection with a previous motion, Marseet submitted a letter from his medical provider dated December 22, 2020.  (Docket # 152-4).  In the letter, Marseet's provider represented that he had been providing mental health treatment to Marseet since July 20, 2020.  (*Id.*).  Marseet's provider recommended that Marseet be allowed "time off through May, 2020"

---

alleges that the Court has engaged in "severe [j]udicial misconduct against the [p]laintiff which has impacted [p]laintiff's mental health and . . . may lead to the death of the [p]laintiff" and that the Court "engaged in racism." (Docket # 181 at 1, 7).  He continues to accuse the Court of discrimination, racism, and colluding with the defendant and maligns the Court's law clerk as dishonest, non-neutral, and someone with whom "[p]laintiff does not want to deal." (Docket ## 166, 182).  Nevertheless, because these motions substantively address procedural matters that require rulings in order for this matter to proceed to resolution, the Court will exercise its discretion to resolve them on the merits.  The Court does not anticipate exercising its discretion in such manner in the future.

and that "he be allowed assistance/reassurance that no judgments or negative attitudes have been made because of his current disability." (*Id.*).

Finally, in connection with a request for an extension of time, Marseet submitted additional medical information. According to Marseet, in April 2023 he met with a gastroenterologist and visited an emergency department in an attempt to identify the source of abdominal pain. (Docket # 179). Marseet also submitted medical records from this emergency department visit. (*Id.*). According to Marseet, the source of his abdominal pain "has not yet been identified." (*Id.*).

Marseet maintains that the transcript of Yazback's deposition supports his request for a protective order. (Docket # 182). According to Marseet, the transcript demonstrates that he struggled to formulate comprehensible questions and that RIT's counsel was uncivil. (*Id.*). RIT opposes the motion on the grounds that Marseet has failed to demonstrate good cause warranting such relief. (Docket # 169).

The Federal Rules of Civil Procedure permit discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Nevertheless, the Court retains substantial discretion to determine the appropriate scope of discovery. *See El Omari v. Int'l Crim. Police Org.*, 35 F.4th 83, 94 (2d Cir.) ("a district court has wide latitude to determine the scope of discovery"), *cert. denied*, 143 S. Ct. 214 (2022). Pursuant to Rule 26(c), for good cause shown, a court is permitted to limit discovery by issuing "an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden." Fed. R. Civ. P. 26(c)(1).

"A prohibition against the taking of an oral deposition is a very unusual procedure and a party who seeks a protective order prohibiting such a deposition bears a heavy burden of

demonstrating good cause for such an order." *Kamdem-Ouaffo v. Balchem Corp.*, 2020 WL 8838038, *8 (S.D.N.Y. 2020), *report and recommendation adopted by*, 2021 WL 1101126 (S.D.N.Y. 2021), *motion for relief from judgment denied by*, 2022 WL 1000285 (S.D.N.Y. 2022), *reconsideration denied by*, 2023 WL 2266536 (S.D.N.Y. 2023).  Accordingly, "[w]here a protective order is requested on the basis of the deponent's health, the moving party must show that a clearly defined, specific and serious injury will occur in the absence of such an order." *Id.* (internal quotations omitted).  In support of such a showing, "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, are not sufficient to satisfy the burden." *Id.* (quotations and brackets omitted).  Pursuant to this standard, conclusory or speculative contentions of harm are insufficient to warrant the grant of a protective order, and potential health concerns that do "not rise to the level of a clearly defined and serious injury" should be addressed through reasonable accommodations.  *See id.*

Judged under these standards, Marseet has not established that a protective order is warranted.  Indeed, nothing in Marseet's submissions suggests that his participation in an oral deposition poses any risk of injury or harm, much less "a clearly defined, specific, and serious" risk of injury.  At best, Marseet's submissions suggest that he suffers from unidentified medical conditions, the symptoms of which may impede or delay his ability to recall information and formulate answers to the questions posed during the deposition.  Of course, that Marseet "may experience confusion and memory recall difficulties cannot excuse him from his obligation to appear at his deposition." *See Soft Drink, Brewery Workers & Delivery Emps., Indus. Emps., Warehousemen, Helpers & Miscellaneous Workers, Greater N.Y. & Vicinity, Local Union No. 812 v. Ulrich*, 2021 WL 2227921, *3 (S.D.N.Y. 2021) ("[m]emory limitations, however, are not a basis to be excused from a deposition").  To the extent Marseet suffers from medical conditions

that cause physical discomfort, he has not submitted any evidence to suggest that such symptoms would be aggravated or exacerbated by participating in an oral deposition. In any event, "it is not uncommon for witnesses at depositions to experience a degree of discomfort, whether physical, mental, or emotional." *Id.* at 4. Of course, to the extent Marseet's medical conditions require accommodation during the deposition, such as additional or extended breaks, he is free to request those accommodations, and the Court expects that RIT would agree to reasonable accommodation requests.

Marseet contends that the transcript of Yazback's deposition supports his request for a protective order because it reveals his difficulty articulating questions. To the contrary, I find that the transcript shows that Marseet has the ability to participate in an oral deposition. Marseet conducted the oral deposition for approximately five hours with only two breaks, one lasting approximately fifteen minutes and the other lasting approximately twenty minutes. (Docket # 128-4 at 5, 66, 167, 219). Marseet did not appear to suffer significant physical discomfort or cognitive deficits, and nothing in the transcript suggested that Marseet suffered any "clearly defined, specific and serious injury" during the deposition. Indeed, Marseet often resisted, at least initially, requests for breaks made by the court observer and RIT's counsel. (*Id.* at 120, 135, 166-67).

As the Court previously recognized (Docket # 157 at 14-16), the transcript does demonstrate that Marseet had difficulty articulating comprehensible and succinct questions. That said, the origin or cause of those difficulties is unclear. As the Court noted, Marseet's difficulties appeared to be exacerbated by the fact that English is not his native language, as well as by his tendency to ask compound questions complicated by unfounded and disputed factual assumptions. (*See id.*). Further, although Marseet indicated during the deposition that he had

difficulty focusing, the participants attempted to alleviate the difficulties by speaking more slowly and trying to limit interruptions to his questions where possible. (Docket # 128-4 at 78-79, 179). Similar accommodations, as well as extra breaks, should be afforded during Marseet's oral deposition. In addition, Marseet is reminded that he may pause before answering a question to be sure he understands the question and has considered it before speaking.

Marseet's remaining contentions are without merit. On this record, the Court discerns no basis to limit the scope of questioning to information and materials contained in Marseet's pleadings and filings. As stated above, the proper scope of discovery encompasses factual information relevant to any of the parties' claims or defenses. Additionally, as this Court previously has explained, review of the transcript of Yazback's deposition demonstrates that RIT's counsel "behaved reasonably throughout the deposition, despite Marseet's uncivil and inappropriate behavior." (Docket # 157 at 17). Accordingly, Marseet's motion for a protective order (Docket # 166) is denied.[6]

## II.    Motion to Appoint Counsel (Docket # 192)

I turn next to Marseet's request for the appointment of counsel. (Docket # 192). It is well-settled that there is no constitutional right to appointed counsel in civil cases. Although the Court may appoint counsel to assist indigent litigants pursuant to 28 U.S.C. § 1915(e), *see, e.g.*, *Sears, Roebuck and Co. v. Charles W. Sears Real Estate, Inc.*, 865 F.2d 22, 23 (2d Cir. 1988), such assignment of counsel is clearly within the judge's discretion. *In re Martin-Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984). The factors to be considered in deciding whether or not to assign counsel include the following:

---

[6] In accordance with my previous determination (Docket # 157 at 17), the oral deposition of Marseet will be supervised by the Court.

1.      Whether the indigent's claims seem likely to be of
        substance;

2.      Whether the indigent is able to investigate the crucial facts
        concerning his claim;

3.      Whether conflicting evidence implicating the need for
        cross-examination will be the major proof presented to the
        fact finder;

4.      Whether the legal issues involved are complex; and

5.      Whether there are any special reasons why appointment of
        counsel would be more likely to lead to a just
        determination.

*Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997); *see also Hodge v. Police Officers*, 802

F.2d 58, 61-62 (2d Cir. 1986).

        The Court must consider the issue of appointment carefully, of course, because

"every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer

lawyer available for a deserving cause." *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d

Cir. 1989).  Therefore, the Court must first look to the "likelihood of merit" of the underlying

dispute, *Hendricks v. Coughlin*, 114 F.3d at 392; *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d at

174, and "even though a claim may not be characterized as frivolous, counsel should not be

appointed in a case where the merits of the . . . claim are thin and [plaintiff's] chances of

prevailing are therefore poor." *Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632

(2d Cir. 2001) (denying counsel on appeal where petitioner's appeal was not frivolous but

nevertheless appeared to have little merit).

        Marseet urges the Court to appoint counsel to assist him with conducting expert

depositions and preparing his written deposition questions.  (Docket # 192).  Marseet also

maintains that counsel is necessary because he suffers from medical conditions affecting his

ability to litigate this action on his own behalf. (*Id.*). Finally, Marseet represents that he was forced to terminate his relationship with his previous lawyer because the lawyer "engaged in collusion with the [d]efendant." (*Id.*).

This is not the first time Marseet has requested the appointment of counsel. As the Court noted in its previous decision denying appointment of counsel, "[a]lthough Marseet represents that he does not have the funds to retain an attorney to represent him (Docket # 73), he has never been granted *in forma pauperis* status and has not submitted any information regarding his financial status." (Docket # 118 at 5). The Court will not grant Marseet's current request or any future ones in the absence of an affidavit demonstrating his indigence. *See Curbow v. Clintsman*, 2022 WL 220532, *1 (W.D. Wash. 2022) ("[i]n its [o]rder, the [c]ourt explained that plaintiff did not qualify for appointed counsel under 28 U.S.C. § 1915(e)(1) because plaintiff has not demonstrated that he is indigent . . . and plaintiff is not proceeding *in forma pauperis*"); *Bateman v. Nexstar Media Grp., Inc.*, 2020 WL 13644772, *1 (D. Utah 2020) ("[t]he court's authority to appoint counsel . . . necessarily depends upon a plaintiff's ability to proceed [*in forma pauperis*][;] . . . Section 1915(e)(1) applies only if [plaintiff] has been found eligible to proceed [*in forma pauperis*] due to his indigence"). Moreover, Marseet, who maintains that he fired his previous attorney, has failed "to describe any efforts he undertook to retain counsel." *Saviano v. Local 32B-32J*, 75 F. App'x 58, 59 (2d Cir. 2003) (summary order); *see Cao-Bossa v. N.Y.S. Dep't of Labor*, 2019 WL 13115844, *1 (N.D.N.Y. 2019) ("[p]rior to evaluating a request for appointment counsel, a party must first demonstrate that [he] is unable to obtain counsel through the private sector or public interest firms[;] . . . [p]laintiff has made no showing that [he] has made a reasonable effort to retain counsel without success").

In any event, the Court has reviewed the facts presented herein in light of the factors required by law and finds, pursuant to the standards stated by *Hendricks*, 114 F.3d at 392, and *Hodge v. Police Officers*, 802 F.2d at 61-62, that the appointment of counsel is not warranted at this time.  Although Marseet conclusorily asserts that his medical conditions impair his ability to litigate this matter, he has filed numerous motions seeking relief from the Court (*see*, *e.g.*, Docket ## 32, 37, 38, 39, 40, 41, 42, 52, 54, 55, 73, 74, 83, 99, 100, 101, 112, 113, 123, 129, 130, 131, 133, 134, 135, 136, 137, 138, 139, 140, 149, 165, 166, 170, 172, 175, 176, 179, 184, 192, 193, 194, 195, 196), thus demonstrating his ability to seek court intervention when he believes it is warranted.  Further, Marseet has not presented any other special circumstances justifying the appointment of counsel.  On this record, plaintiff's request for the appointment of counsel (Docket # 192) is denied without prejudice at this time.  It is plaintiff's responsibility to retain an attorney or continue with this lawsuit *pro se*.  28 U.S.C. § 1654.

**III.    Motion to Extend Deadlines for Depositions upon Written Questions (Docket # 165)**

By Decision and Order dated January 27, 2023, this Court granted RIT's motion for a protective order and limited Marseet to conducting nine depositions by written questions. (Docket # 157).  In that Order, the Court set a deadline of February 28, 2023 for Marseet to serve RIT with proposed notices for depositions upon written questions for up to nine witnesses and further directed that each notice be accompanied by the written questions Marseet seeks to propound.  (*Id.*).

On February 24, 2023, Marseet filed a motion seeking an extension of the deadline to serve his deposition notices and written questions.  (Docket # 165).  According to Marseet, he requires additional time to serve the notices due to ongoing medical issues and

conditions.  (*Id.*).  In support, Marseet submitted several exhibits documenting medications that he has been prescribed, which he represents he has been taking since 2018.  (*Id.*).  He also submitted documents describing the purpose and side effects of those medications and confirming appointments with his mental health provider.  (*Id.*).

Marseet also contends that additional time is warranted because RIT has not yet produced several items of requested discovery, including an audio recording of his student disciplinary proceedings, certain photographs, and student payment records.  (*Id.*).  Additionally, Marseet maintains that safety concerns caused him to relocate his residence, further impeding his ability to meet the February 28 deadline.  (*Id.*).  According to Marseet, he attempted to confer with RIT about an extension, but those conferrals were not successful.[7]  (*Id.*).  Marseet requests that the Court extend the deadline by six months and proposes that he serve the deposition notices and written questions for each witness as he completes them.  (*Id.*).

RIT opposes the motion on the grounds that Marseet has not shown good cause.  (Docket # 169).  With respect to Marseet's health conditions, RIT maintains that the medical documents he has submitted do not demonstrate that his treatment or medical conditions would interfere with his ability to pose written deposition questions.  (*Id.* at 7).  Moreover, it maintains that Marseet's contention that his health conditions impede his ability to litigate this matter is belied by the record, which includes numerous lengthy filings by Marseet.  (*Id.*).  With respect to outstanding discovery, RIT maintains that it has complied with this Court's orders requiring RIT to supplement its discovery responses and document production, and has made and continues to make the audio recording available to Marseet for inspection.  (*Id.* at 8).

---

[7]  Marseet maintains that he did not receive a hard copy of this Court's January 27, 2023 Decision and Order until February 10, 2023, but concedes that he was aware of the deadlines in the order by January 31, 2023, the date upon which he emailed counsel for RIT to discuss his extension request.  (*Id.*).

In reply, Marseet disputes that RIT has fully complied with this Court's prior discovery orders.  (Docket # 181).  According to Marseet, RIT still has not produced a transcript of his student conduct proceedings,[8] or documents reflecting whether TH[9] was affiliated with RIT after August 2019.  (*Id.* at 7-8).  Marseet also maintains that RIT has not yet produced any documents in response to his fourth discovery demand.  (Docket # 181 at 9).  Additionally, Marseet maintains he has had difficulty engaging a court reporter to conduct the depositions upon written questions and that he wishes to stagger the depositions because his questions to some witnesses may depend upon information learned during the depositions of other witnesses.  (*Id.*).

With respect to Marseet's discovery complaints, the record demonstrates that RIT has complied with its obligation to make the audio recording available for Marseet's review and inspection, but Marseet has not yet made arrangements to do so.  (Docket # 169-1 at ¶ 16).  With respect to TH's affiliation with RIT after August 2019, the Court previously directed RIT to "provide Marseet an affidavit from someone with personal knowledge attesting to TH's dates of attendance and indicating whether TH was enrolled at or employed by RIT at anytime after August 13, 2019."  (Docket # 159 at 25).  It is not clear from the record whether RIT has

---

[8]  In its January 30, 2023 Decision and Order, the Court sustained RIT's objection to production of the original recording and directed RIT to make the recording available for Marseet's inspection and review at a mutually agreeable time.  (Docket # 159 at 29).  In his reply submission, Marseet expresses his disagreement with the Court's determination and suggests that he will make a recording of the audio recording when he inspects it.  (Docket # 181 at 8).  The Court reiterates that it has sustained RIT's objection to providing a copy of the audio recording, and Marseet is not authorized to make any recordings of the audio during his inspection.

[9]  Marseet's filings are replete with inappropriate and caustic personal attacks against this individual, who is a former RIT student.  Accordingly, the Court will refer to the individual herein as "TH."

complied with this directive.  If it has, it should provide a copy of its response to the Court by July 7, 2023.  If it has not, it must do so, with a copy to the Court, by that same date.[10]

I turn now to Marseet's request for an extension of time within which to propound his written deposition questions.  As a litigant proceeding *pro se*, he may require some additional time to review materials and propound his written questions beyond that which an attorney would need.  Further, Marseet has experienced disruptions in his personal life, including at least one visit to the emergency department and relocation of his residence.  Additionally, Marseet has now explained that he desires to vary the timing of some of the depositions.  Accordingly, the Court finds good cause to extend the deadline, but not for the lengthy six-month period requested by Marseet.

Although Marseet maintains that his health conditions have impeded his ability to litigate this matter, as discussed above, the information Marseet has provided suggests that he has suffered from health conditions throughout this litigation, and those conditions have not prevented him from filing numerous motions and requests for judicial intervention.  Indeed, since his February 24, 2023 request for an extension, Marseet has submitted approximately fifteen filings, totaling approximately 193 pages in length.  (Docket ## 170, 171, 172, 175, 176, 179, 181, 182, 183, 184, 192, 193, 194, 195, 196).  Despite that, Marseet apparently has not served a single notice of deposition upon written questions with the accompanying proposed questions.

In order to permit the depositions by written questions to be completed in an efficient manner, and in an attempt to resolve any anticipated disputes, the Court directs the parties to adhere to the following schedule and procedure:

---

[10]  Marseet also suggests that RIT has failed to produce documents in response to his fourth set of document demands.  (Docket # 181 at 9).  Marseet raised this issue for the first time in reply, and it is unclear from his submission when such responses were due.  Accordingly, this issue is not presently before the Court.

1.      On or before **September 1, 2023**, Marseet shall serve RIT with proposed notices for deposition upon written questions for four (4) of the authorized nine (9) party or non-party witnesses he wishes to depose.  For each notice, Marseet should include the written questions he seeks to propose.

   a.      On or before **September 22, 2023**, RIT shall serve any objections to the notices or proposed written questions.

   b.      On or before **October 6, 2023**, the parties shall confer in good faith in an attempt to resolve any disputes.

   c.      On or before **October 13, 2023**, for any proposed non-party witnesses to which RIT does not object or as to which the parties have resolved all disputes, Marseet shall file with the Court a request for a subpoena.  Each request shall include the deposition notice, written questions, and proposed subpoena.

   d.      For any unresolved disputes, on or before **October 20, 2023**, RIT shall file a motion seeking a protective order precluding or limiting the proposed deposition(s).  Marseet shall respond on or before **November 3, 2023**.

   e.      For those witnesses as to which no disputes remain outstanding, the depositions upon written questions of those witnesses shall be completed on or before **November 13, 2023**.

2.      On or before **December 13, 2023**, Marseet shall serve RIT with proposed notices for deposition upon written questions for each of the remaining five (5) party or non-party witnesses whom he wishes to depose.[11]  For each notice, Marseet should include the written questions he seeks to propose.

   a.      On or before **January 3, 2024**, RIT shall serve any objections to the notices or the proposed written questions.

   b.      On or before **January 24, 2024**, the parties shall confer in good faith in an attempt to resolve any disputes.

   c.      On or before **January 31, 2024**, for any proposed non-party witnesses to which RIT does not object or as to which the parties have resolved all disputes, Marseet shall file with the Court a

---

[11]  The Court anticipates that Marseet will continue to formulate his written questions for the final five witnesses while the parties confer regarding the written questions for the original four witnesses and conduct their depositions.  Nonetheless, because Marseet indicated that he may need to modify questions or ask additional questions based upon the answers provided by some deponents, the Court has provided an additional month after the conclusion of the first set of depositions to permit Marseet the time within which to do so.

request for a subpoena.  Each request shall include the deposition notice, written questions, and proposed subpoena.

d.    For any unresolved disputes, on or before **February 7, 2024**, RIT shall file a motion seeking a protective order precluding or limiting the proposed deposition(s).  Marseet shall respond on or before **February 21, 2024**.

e.    For those witnesses as to which no disputes remain outstanding, the depositions upon written questions of those witnesses shall be completed on or before **February 29, 2024**.

The current Amended Scheduling Order set a June 13, 2023 deadline for the completion of fact discovery.  (Docket # 163).  Given the schedule for depositions, by separate order, the Court will issue an amended scheduling order extending, among other deadlines, the deadline for fact discovery completion to February 29, 2024.

## IV.    <u>Motion for Non-Party Subpoena (Docket ## 183, 184)</u>

Finally, I turn to Marseet's request that the Court issue a subpoena *duces tecum* to non-party TH.  (Docket ## 183, 184).  Marseet's request fails to comply with Rule 45 of the Federal Rules of Civil Procedure, which governs the issuance of non-party subpoenas.  As an initial matter, Marseet's submission does not comply with the form requirements of the rule, which provides that a subpoena include the text of Rule 45(d) and (e).[12]  *See* Fed. R. Civ. P. 45(a)(1)(A)(iv).  Additionally, it is Marseet's obligation, not this Court's, to identify the proper address for service upon the non-party.  *See* Fed. R. Civ. P. 45; *Johnson v. Clark*, 2013 WL 646022, *5 (D. Ariz. 2013) ("it is ultimately [p]laintiff's responsibility to provide [the] proper address . . . in order to effectuate service[;] . . . federal judges have no obligation to act as counsel or paralegal to pro se litigants[,] . . . [and] it is not a federal judge's role or responsibility

---

[12]  To the extent Marseet intends to request additional non-party subpoenas, the Court refers him to Form AO88B, available at: https://www.nywd.uscourts.gov/forms-3.

to track down a[n] . . . address so a plaintiff may serve process").  Finally, it is not clear that

Marseet's proposal to have the documents produced electronically to his email account complies

with Rule 45's requirement that the location for compliance be "at a place within 100 miles of

where the [non-party] resides, is employed, or regularly transacts business in person."  *See* Fed.

R. Civ. P. 45(c)(2)(A); *Chevron Corp. v. Donziger*, 2020 WL 635556, *5 (S.D.N.Y. 2020)

("[plaintiff] argues that Rule 45's geographical restrictions do not apply where the subpoenaed

party could submit the requested documents electronically[;] [b]ut the plain text of Rule 45 is to

the contrary"); *CSS, Inc. v. Herrington*, 354 F. Supp. 3d 702, 710 (N.D. Tx. 2017) ("an email

address does not qualify as a location or place where compliance is required under Rule 45,

although the subpoenaing party and the subpoenaed person could agree to production by

electronic means"); *but see Chestnut v. Kincaid*, 2022 WL 350117, *3 (D. Md. 2022) ("courts

have found that the 100-mile restriction is not violated where the person is not instructed to

appear at the location of production") (collecting cases).

   Setting aside the technical infirmities, I find that the documents and information

sought by Marseet are not relevant to this litigation.  As this Court has previously determined,

information "relating to TH might be relevant, but only to the extent that the information was

known to the individuals involved in the student conduct determination and would create reason

to doubt or question TH's testimony."  (Docket # 159 at 11-12, n.2).  The critical question in this

case is whether RIT's determination to expel Marseet was made on the basis of his race, national

origin, ethnicity, or disability.  *See Gilmore v. Lancer Ins. Co.*, 2010 WL 87587, *7 (E.D.N.Y.

2010) ("[t]he question in this Title VII case is not whether defendant's decision to fire plaintiff

was correct but whether it was discriminatory").  Whether and the extent to which any of the

witnesses during the hearing, including TH, provided false testimony is relevant only insofar as

the adjudicators were aware of the false testimony but chose to ignore it.  *See McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("[i]n a discrimination case[,] . . . we are decidedly not interested in the truth of the allegations against plaintiff[;] [w]e are interested in what *motivated* the employer") (internal quotation omitted); *Agugliaro v. Brooks Bros., Inc.*, 927 F. Supp. 741, 747 (S.D.N.Y. 1996) ("[e]ven assuming defendants were wrong in their belief that plaintiff had engaged in sexual misconduct, what is significant is that they based their decision to dismiss plaintiff on that belief, and not on his age, gender, or pension status").

The first three requests in Marseet's proposed document demands to TH seek private photographs shared with another non-party and communications between TH and that non-party.  (Docket # 183).  Such information does not appear relevant to the issues to be litigated in this matter.  The remaining two demands seek communications between TH and Marseet.  The relevancy of these communications is also unclear.  In any event, because the requests seek communications between TH and Marseet, such communications should already be in Marseet's possession.  To the extent that Marseet recalls relevant written or electronic communications with TH that he did not retain, he has not identified or described them.  On this record, Marseet's motion for a non-party subpoena (Docket # 184) is denied.  RIT's motion for an extension of time to respond to Marseet's motion (Docket # 185) is denied as moot.

## CONCLUSION

For the reasons stated above, I recommend that the District Court impose a filing injunction that requires Marseet to obtain permission from the Court each time before making any filing or submission, by submitting a copy of the proposed filing or submission and a one-page letter showing cause why the submission should be accepted.

The Clerk of the Court is directed to strike Marseet's noncompliant filings **(Docket ## 193, 194, 195, 196)**.

For the reasons stated above, Marseet's motions for a protective order **(Docket # 166)**, appointment of counsel **(Docket # 192)**, and a non-party subpoena *duces tecum* **(Docket ## 183, 184)** are **DENIED**. RIT's motion for an extension of time to respond **(Docket # 185)** is **DENIED as MOOT**. Marseet's motion for an extension of time to serve written deposition notices **(Docket # 165)** is **GRANTED in PART and DENIED in PART**. A modified scheduling order is docketed herewith. (Docket # 199).

Finally, in order to permit the depositions by written questions to be completed in an efficient manner, and in an attempt to resolve any anticipated disputes, the Court directs the parties to adhere to the schedule and procedure outlined at pages 22-23 of this Decision and Order.

**IT IS SO ORDERED.**

*s/Marian W. Payson*

MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
          June 28, 2023

26

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b), 6(a) and 6(d) and Local Rule 72(b).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b), or with the similar provisions of Rule 72(a) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
      June 28, 2023