UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

AKRAM MARSEET,

                                 Plaintiff,              Case # 20-CV-7096-FPG

v.                                                  DECISION & ORDER

ROCHESTER INSTITUTE OF TECHNOLOGY, et al.,

                                 Defendants.

## INTRODUCTION

Defendant Rochester Institute of Technology ("RIT") has filed a motion to dismiss Plaintiff Akram Marseet's complaint as a sanction for Plaintiff's ongoing "offensive behavior and disregard of the Court's orders."  ECF No. 189 at 14; *see also* ECF No. 187.  Plaintiff opposes the motion. For the reasons that follow, RIT's motion is GRANTED, and this action is DISMISSED WITH PREJUDICE.

## DISCUSSION

A federal district court has the inherent authority "to impose sanctions, including dismissal, for a litigant's bad faith conduct."  *Kalwasinski v. Ryan*, No. 96-CV-6475, 2007 WL 2743434, at *2 (W.D.N.Y. Sept. 17, 2007).  "This authority is governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (internal quotation marks omitted).  The district court's inherent authority "extends to [the] full range of litigation abuses," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991), including the repeated use of "offensive, abusive, and insulting language."  *Koehl v. Bernstein*, 740 F.3d 860, 863 (2d Cir. 2014).

"While district courts generally have broad discretion with respect to the imposition of sanctions," the Second Circuit has "recognized that dismissal with prejudice is a harsh remedy to

be used only in extreme situations, and then only when a court finds willfulness, bad faith, or any fault by the non-compliant litigant." *Id.* at 862.  A district court's decision must be "supported by clear evidence of misconduct and a high degree of specificity in the factual findings." *Koehl v. Greene*, 424 F. App'x 61, 62 (2d Cir. 2011) (summary order) (internal quotation marks omitted). Furthermore, even though courts must afford *pro se* litigants "a special solicitude," *Bernstein*, 740 F.3d at 862, a *pro se* litigant  is not "immune to dismissal as a sanction" for bad faith conduct if he has been warned that his conduct may "result in dismissal."  *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009).

The case of *Koehl v. Bernstein*, 740 F.3d 860 (2d Cir. 2014), is instructive on the use of sanctions to address a *pro se* litigant's abusive and insulting language.  There, a *pro se* litigant repeatedly made offensive, highly inappropriate remarks to the magistrate judge handling his case:

- Plaintiff "opined [in a letter] that if the allegations in his motion were true, defendants' counsel should be disbarred and that 'anything less would be pissing in the face of my rights.'"
- Plaintiff accused the magistrate judge of being "a gay basher and homophobic," writing, "When some Jamician [sic] rapist scumbag was greasing up his dick and trying to force it into my ass or choking me while trying to force his dick into my mouth, you scratched your ass and did nothing."
- Plaintiff wrote a letter stating, "You are never going to stop screwing me over. Honestly, the more I ruminate on matters the more I think of you in the negative. I honestly believe you surpassed being biased to be more appropriately considered pure evil. You disgrace the bench with every breath you take."

*Koehl v. Bernstein*, No. 10-CV-3808, 2012 WL 2135382, at *3 (S.D.N.Y. June 13, 2012) (internal quotation marks and brackets omitted).  The magistrate judge ordered Plaintiff to desist from his personal attacks and cautioned him that his case may be dismissed as a sanction if he persisted. Plaintiff continued, however:

- In one letter, Plaintiff accused opposing counsel of "'lying to cover his repugnant behavior' and referred to him as 'stupid,' 'incompetent,' a 'complete idiot,' and a 'disgrace,'" which he immediately followed with another letter "accus[ing] [counsel] of having improperly influenced [the magistrate judge]."

- In another letter, Plaintiff referenced "the 'micky mousing [the magistrate judge] does' and stat[ed] that 'it is obvious to even a half retarded monkey that [magistrate judge] is again trying to screw me over.'"

*Id.* at *4 (internal quotation marked and brackets omitted).  Plaintiff did not stop even when the magistrate judge ordered him to show cause why the case should not be dismissed "in light of his repeated use of abusive and intemperate language."  *Id.* at *4-5.  Consequently, the magistrate judge recommended that the case be dismissed as a sanction for Plaintiff's abusive language.  *Id.* at *8.

The district court adopted the recommendation, and the Second Circuit affirmed.  The Second Circuit found the sanction appropriate given, *inter alia*, Plaintiff's persistent conduct in the face of repeated warnings and the highly "offensive, abusive, and insulting language" that he repeatedly employed.  *Bernstein*, 740 F.3d at 863.  In doing so, the Second Circuit made clear that the mere accusation that the magistrate judge "was biased against [Plaintiff]" was not sanctionable.  *Id.*  But the "the right to accuse a judge of bias (or of misconduct) does not carry with it the right to abuse and insult."  *Id.*

As will be discussed below, a similar analysis prevails in this case and leads to the same outcome.

The Court begins by summarizing the relevant portions of the record in this case.  With the assistance of counsel, Plaintiff filed a complaint against RIT in December 2020.  ECF No. 1.  The complaint states that in August 2015, Plaintiff—an international student from Libya—enrolled in a Master's Degree program at RIT.  RIT hired Plaintiff as a "student employee," and Plaintiff alleged that his supervisor paid him less and gave him fewer desirable assignments on account of his race and national origin.  *Id.* at 4.  Plaintiff alleged that he complained about this discrimination to RIT, which did not take any remedial action.  *See id.* at 6-7.

Separate from that alleged mistreatment, Plaintiff also claimed that an RIT student, later identified as T.H.,[1] "levied false allegations against [] Plaintiff" that resulted in a campus disciplinary proceeding. *Id.* As subsequent filings revealed, Plaintiff's theory was that T.H. had made false allegations that Plaintiff was stalking and harassing her in order to discredit Plaintiff, who had uncovered that T.H. had taken "intimate" photographs in one of RIT's research labs.[2] *See, e.g.*, ECF No. 37 at 1-2; ECF No. 161 at 6 (summarizing the misconduct allegations against Plaintiff). In his complaint, Plaintiff asserted that T.H.'s allegations and the disciplinary proceeding itself were the result of national-origin discrimination. ECF No. 1 at 4-7. Plaintiff sought accommodations in connection with the proceeding due to his mental health disability, which otherwise "made it impossible for him to participate effectively in his defense." *Id.* at 5. Because he could not competently defend himself, witnesses "were able to put forth false evidence" at the proceeding, and Plaintiff was expelled from school. *Id.* Finally, Plaintiff alleged in the complaint that RIT engaged in unlawful retaliation regarding his complaints of discrimination.

Read liberally, Plaintiff's complaint raised claims for violations of (1) the New York State Human Rights Law; (2) 42 U.S.C. § 1981; (3) 42 U.S.C. § 1982; (4) 42 U.S.C. § 1983; and (5) Title VII of the Civil Rights Act of 1964. *Id.* at 1-2, 7-8. In March 2021, RIT answered the complaint, ECF No. 10, and the matter was referred to a magistrate judge for discovery. ECF No.

---

[1] Although it does not appear that T.H. is a minor, the nature of Plaintiff's allegations make pseudonymity appropriate under the circumstances.

[2] Plaintiff has placed several photographs of T.H. into the record. *See, e.g.*, ECF No. 220-2. RIT alleges that Plaintiff obtained these photographs without authorization. Plaintiff denies this claim, asserting that he happened to come upon them when he was returning a camera to T.H.'s desk drawer. *See* ECF No. 50 at 8. One photograph is a picture of a bare nipple, and the others are shots of T.H.

11.  In March 2022, Plaintiff's counsel withdrew from the action by stipulation, and Plaintiff thereafter proceeded *pro se*.  ECF No. 30.

Almost immediately, Plaintiff began injecting "offensive, abusive, and insulting language" into his communications with opposing counsel and the magistrate judge.  *Bernstein*, 740 F.3d at 863.  Plaintiff's initial set of inappropriate statements can be placed into four categories.

First, Plaintiff constantly accused RIT of terrorism and of attempting to kill and/or assassinate him, despite having been warned by the magistrate judge to refrain from doing so.  ECF No. 58-1 at 6-7; ECF No. 66 at 1 (acknowledging magistrate judge's instructions).  In substance, Plaintiff's claim appears to be that, by expelling him and then taking other steps to prevent him from obtaining a lawful immigration status, RIT has made it more likely that he will be removed to Libya, which has become a much more dangerous country since the onset of the civil war.  *See* ECF No. 37 at 4-8; ECF No. 45-2 at 8.  But Plaintiff employs extremely inflammatory and misleading rhetoric to make that fairly narrow point.  He accused RIT of engaging in "a terrorist act," ECF No. 45-2 at 8; of being a "terrorist organization," ECF No. 37 at 15; of actively "want[ing] to get [him] killed," ECF No. 27 at 2; and of attempting to "cause [his] death/assassinate [him]," ECF No. 37 at 2; ECF No. 51 at 3.  Plaintiff went so far as to file a motion to "protect [his] life," asking the magistrate judge to enjoin RIT from "working on ending [his] life[,] directly or indirectly."  ECF No. 37 at 1.

Second, Plaintiff repeatedly used abusive and insulting language in his disagreements with opposing counsel—again, despite warnings from the magistrate judge to desist.  *See* ECF No. 58-1 at 6-7.  He accused defense counsel of failing to respect the court, *see* ECF No. 39 at 1; ECF No. 49 at 2; ECF No. 50 at 6; ECF No. 51 at 3; ECF No. 89 at 1; ECF No. 100 at 1, of acting unprofessionally, ECF No. 39 at 12, 23; ECF No. 49 at 2; ECF No. 51 at 13, 18, of "trying to cheat

the Judge," ECF No. 48 at 4, of colluding with his prior attorney, ECF No. 50 at 6; ECF No. 68 at 5, of having low morals, *id.* at 23 ("Plaintiff advise [RIT's counsel] to study law again and before that she must study morals."), and of being mentally impaired, ECF No. 68 at 5, 12.  This language sometimes revolved around the "dirtiness" or "filthiness" of RIT or its counsel, as compared to the Plaintiff's purity.  *Compare* ECF No. 50 at 7 ("Plaintiff is using discovery to prove that he is a pure male . . . ."), *and id.* at 8 (discussing his "pure principle" and "pure culture"), *with* ECF No. 39 at 11 (stating that RIT made a "filthy lie" about Plaintiff), ECF No. 58-10 at 5 (defense counsel's delayed discovery responses were "one of the filthy strategies your client is using"), ECF No. 50 at 13 (defense counsel's principles "are very below the principle of the Plaintiff so that they won't grasp and won't value his pure principles towards females"), *id.* at 17, ECF No. 51 at 7 ("It is unprofessional to make future judges [sic] about any person.  This is a filthy act by Defendant Counsel."), *and* ECF No. 67 at 2 ("Plaintiff is not dirty (in terms of humanity like the Defendant and its counsels . . . .").  He accused RIT's attorneys of "hunting in the dirty water."  ECF No. 48 at 4.  He chastised Hinna Upal—one of RIT's attorneys and a Muslim woman—for failing to recognize that T.H.'s conduct was "[a] sin."  ECF No. 50 at 8; *see also id.* at 10-11, 25.

Plaintiff repeatedly demeaned Attorney Upal.  He requested that the magistrate judge "tell the Plaintiff what kind of women [sic] Hinna Upal is."  ECF No. 48 at 2.  He "wonder[ed] how [Attorney] Upal became a duly licensed attorney."  ECF No. 50 at 25; *see also id.* at 27, 28, 33; ECF No. 51 at 2, 7, 14, 16, 27.  He also called Attorney Upal  "a '…….' woman."  ECF No. 48 at 1; *see also id.* at 2 ("This '…….' Woman Hinna Upal accused that [] [Plaintiff] has a personal vendetta [against two witnesses].");  ECF No. 66 at 2.  Plaintiff may find this tactic crafty, but it is clear that he was attempting to personally insult defense counsel while "omitting" the insulting invective he intended to convey.  In another context, Plaintiff appears to have used this ellipsis to

denote a promiscuous woman.  *See* ECF No. 50 at 9-10 ("[O]ne day [T.H.] left the lab and went

to the airport, picked up the male who treated her as ………, had a sex out of marriage, and then

came back to the lab and lied to the Plaintiff that the flight delayed.  Look how mush cheap and

…. This girl."); *see also id.* at 18.  Later, Plaintiff explicitly insulted Attorney Upal in that manner.

*See* ECF No. 91 at 2.  Plaintiff also made other inappropriate and irrelevant remarks about Attorney

Upal.  *See* ECF No. 71 at 3 ("When [Attorney] Upal and all her family members go back to her

home country forever, Plaintiff will answer the question about his Visa Status.")

       Third, Plaintiff asserted his entitlement to override court directives and dictate the terms of

his own litigation conduct based on his own standards.  One day after a telephone conference at

which the magistrate judge ordered Plaintiff to desist from calling RIT or its attorneys "terrorists,"

ECF No. 58-1 at 6-7, Plaintiff wrote to the magistrate judge and stated: "If [RIT] repeat [sic]

requesting documents and asking questions about my Visa Status and academic programs, I will

consider that [RIT] is indeed a terrorist organization . . . .  So, if the court does not want me to use

the word terrorist, I respectfully request from the court to prevent [RIT] from asking me such []

questions."  ECF No. 37 at 15; *see also* ECF No. 66 at 1-2, 7 (indicating that he has the right to

continue using language he was instructed to refrain from using); ECF No. 71 at 4.  When the

magistrate judge failed to grant Plaintiff's request for an "urgent meeting," Plaintiff stated that he

was entitled to "reply using the words he sees fit" to RIT and its counsel.  ECF No. 48 at 7; *see*

*also* ECF No. 49 at 13; ECF No. 51 at 1 ("Plaintiff considers Defendant's counsel [] is abusing

him directly and therefore[] Plaintiff preserves his right to respond to her abusive statements by

the appropriate words."); ECF No. 53 at 1.  In disputing RIT's refusal to provide certain

documents, Plaintiff called Attorney Upal a liar and stated that he "will not accept to deal with

liars or with a judge who allows the Defendant to lie."  ECF No. 48 at 3.

Plaintiff threatened to commit suicide if RIT did not "admit its violations against Plaintiff and fix what it violated." ECF No. 39 at 22. Plaintiff also threatened to consider the stipulated protective order "revoked" if RIT relied on it to oppose Plaintiff's discovery demands. ECF No. 49 at 6. Plaintiff informed defense counsel that he would make T.H.'s intimate photograph his "background" if his deposition were video recorded. *See* ECF No. 50 at 13.

Fourth, Plaintiff began accusing the magistrate judge of bias, poor judgment, and discrimination, even *prior* to any adverse ruling. In one instance, Plaintiff stated that if the magistrate judge failed to grant him leave to take depositions but required him to be deposed, he would "consider this as a discrimination by the Judge and will request to change the Judge." ECF No. 51 at 9. Plaintiff stated that he was entitled to depose T.H. and that "any beginner judge will automatically call [T.H.] for testimony." ECF No. 70 at 1. After the magistrate judge struck Plaintiff's unauthorized sur-reply, ECF No. 96, Plaintiff filed a motion for a new magistrate judge. ECF No. 101. Among other things, Plaintiff accused the magistrate judge of colluding with RIT and of engaging in gender discrimination. *See id.* at 4-5. In an email to opposing counsel on July 6, 2022, Plaintiff asserted that "[i]f my life is ended, RIT and [the Magistrate] Judge . . . are my murders [sic] even if they do not do that physically."

On July 8, 2022, the magistrate judge issued an order prohibiting Plaintiff from filing or transmitting to the Court "any materials containing nude, partially nude, or otherwise sensitive depictions of any individuals" without prior court authorization. ECF No. 102 at 1. The magistrate judge took this action because, two days earlier, Plaintiff had hand-delivered to the Clerk's Office a letter containing "several photographs of a non-party individual, one of which contained a partially nude image of the non-party." *Id.*; *see also* note 2, *supra*. The magistrate judge cautioned Plaintiff "that any failure to comply with this Order may result in the imposition of sanctions." *Id.*

at 2.  Plaintiff called the July 8, 2022 order "racist," ECF No. 105 at 5, and maintained that he was entitled to submit "any document that supports his allegations."  *Id.* at 6.

On July 15, 2022, the magistrate judge issued an order that, in light of Plaintiff's continued inappropriate language, ordered Plaintiff to "immediately cease using inappropriate and abusive language and refrain from offensive and *ad hominem* attacks to and about RIT's counsel, potential witnesses, and this Court in his filings and communications."  ECF No. 111 at 5.  The magistrate judge warned Plaintiff that failure to abide by the order could result in sanctions, including dismissal.  *Id.*  This order did not deter Plaintiff.  Just days later, Plaintiff filed a document accusing RIT and its counsel of dishonesty, blaming RIT and the magistrate judge for his death, and accusing RIT of colluding with his former attorney.  ECF No. 112-1.  He alleged that the magistrate judge was "exploiting" his medical conditions and threatening him.  ECF No. 122 at 2.  He asserted that opposing counsel were engaging in "serious sin" by "providing false information" to the magistrate judge, *id.*, insisted that "the law allows [him] to allege that [RIT] worked to end [his] life," *id.* at 7, implied that the magistrate judge was not a "clean Judge," *id.* at 11, reiterated his right to file the intimate photographs notwithstanding the magistrate judge's order, *id.* at 12, and suggested that the magistrate judge was colluding with RIT.  *Id.* at 17-18.

On September 7, 2022, the deposition of Anthony Yazback—RIT's Assistant Director of Public Safety—was conducted.  ECF No. 128-4 at 2.  The magistrate judge had ordered that this deposition be supervised by her law clerk, in light of Plaintiff's prior behavior.  ECF No. 111 at 4-6.  A copy of the deposition transcript is included in the record.  During the deposition, Plaintiff had difficulty confining himself to asking questions, and repeatedly made statements about his case or argued with Yazback.  *See, e.g.*, ECF No. 128-4 at 40-41, 42-43, 44, 46, 54, 98-100, 123, 126, 129, 163, 171.  Plaintiff asked Yazback whether he "attempt[ed] to assassinate [him]" or to

"end [his] life." *Id.* at 68.  Plaintiff accused the magistrate judge and her law clerk of colluding with "the defendant." *Id.* at 71, 74.  Plaintiff told Yazback that he was "not zania," which "means adulterer" and which "[Attorney] Upal can explain to you." *Id.* at 163.  When Yazback supplied an answer that Plaintiff did not believe was accurate, Plaintiff sarcastically stated that he "[ha[d] to withdraw the case and apologize to you . . . because I see you are unable to remember things." *Id.* at 182.  Plaintiff continued: "[C]an I request from the Court to examine you for mental examination." *Id.*  Plaintiff wondered aloud whether Attorney Upal had "studied law or not." *Id.* at 192.  When the magistrate judge's law clerk warned Plaintiff not to accuse others of "ending [his] life," Plaintiff questioned what law "prevented [him] from directing any accusation against the deponent?" *Id.* at 206.

Plaintiff's subsequent filings contain much the same invective. *See, e.g.*, ECF No. 133 at 1 (noting RIT's "filthy conspiracies"); ECF No. 134 at 1 (magistrate judge "is hiding a crime" and "protecting the Defendant"); ECF No. 135 at 2 (referring to magistrate judge as "so called Judge"); *id.* at 6 (explaining that he is "not filthy like others"); ECF No. 138 at 1 (referring to Attorney Upal as a "monkey on the tree laughing at him"); ECF No. 152 at 2 (stating that RIT attempted to assassinate him); *id.* at 7 (accusing defense counsel of lying); *id.* at 13 (stating that he "assume that Defendant counsels studied law"); *id.* at 23 (expecting RIT to "kill/assassinate him").  Plaintiff again manifested his refusal to abide by the magistrate judge's orders, filing a "motion" requesting the "legal[] bases" for the magistrate judge's admonitions that he not use abusive or inappropriate language.  ECF No. 140 at 1; *see also* ECF No. 152 at 10 (insisting that he was entitled file the photographs); *id.* at 14 (agreeing to "accept the court orders" once the magistrate judge "provide[d] [] the legals [sic] bases for the orders"); ECF No. 154 at 1 (noting his intention to use "the language that fit to the level of the Defendant and its counsel" if the magistrate judge refused to "order the

Defendant and its counsel to stop lying and abusing the Plaintiff"); ECF No. 156 at 3.   In responding to RIT's observation that it has been legal for women to be topless in public since 1992, Plaintiff wrote: "If Defendant's Counsel [] *be topless in public*, as she claimed it is legal since *1992*, Plaintiff will withdraw his complaint."  ECF No. 152 at 13.

In January 2023, the magistrate judge issued an order prohibiting Plaintiff from taking further oral depositions.  ECF No. 157.  The magistrate judge concluded that such action was necessary because Plaintiff "engaged in uncivil, discourteous, inflammatory, and abusive conduct that violated the basic rules and expectations of civility applicable to depositions, as well as this Court's July 15, 2022 Order explicitly directing [Plaintiff] to refrain from the use of abusive language in connection with this litigation." *Id.* at 9.  After summarizing the record evidence, the magistrate judge was persuaded that "neither additional court orders nor supervision will effectively deter or dissuade [Plaintiff] from engaging in further uncivil behavior in future depositions." *Id.* at 13.  In addition, the magistrate judge once more warned Plaintiff to desist with "uncivil language regarding the defendant, its counsel, and non-parties," *id.* at 28, cautioning that "continued violations of this Court's orders by [Plaintiff] may result in the imposition of sanctions, which, in addition to the striking of any noncompliant submissions, may include the imposition of monetary sanctions, the closing of discovery, or the dismissal of the complaint." *Id.* at 29.

Plaintiff's rhetoric continued unabated, conveying his positions and disagreements in insulting, irrelevant terms.  Plaintiff noted that neither the magistrate judge nor RIT could grasp "the pureness" in some of his evidence.  ECF No. 170 at 3.  In an email to opposing counsel, he referenced the "filthy orders" and "filthy racism" of the magistrate judge and implied that she was not "clean."  ECF No. 165-4 at 3; ECF No. 170 at 5; *id.* at 10; ECF No. 188-7 at 2 (stating that he only wanted to introduce certain evidence to "clean Judges").  Plaintiff labelled the magistrate

judge his "enemy," ECF No. 170 at 10, baselessly asserted that she was colluding with RIT and its attorneys. ECF No. 188-9 at 3; ECF No. 193 at 8, insulted her knowledge of the law, *see* ECF No. 193 at 12 (stating that he will "educate the Federal [Magistrate] Judge . . . about the laws and rules"); *id.* at 16 (asserting that magistrate judge "is not qualified to be a Judge"), and questioned her morality. ECF No. 194 at 29. Plaintiff lobbed similar insults against opposing counsel as he had previously. *See* ECF No. 196 at 8 (stating that he "is wondering if the Defendant's attorneys are indeed attorneys"). Plaintiff continued to argue that RIT and its employees were attempting to kill him. *See* ECF No. 193 at 2; ECF No. 194 at 3. Notwithstanding the contrary court orders, Plaintiff maintained that he had the unilateral right to request, and refuse to provide, certain evidence, ECF No. 170 at 4; ECF No. 188-7 at 6, and suggested that he was permitted to use abusive and uncivil language as a "natural reaction" to others' conduct. ECF No. 170 at 11 ("Plaintiff speaks based on the level of the audiences as a reaction (Newton's Law) based on their actions.").

The magistrate judge struck two of Plaintiff's submissions for failing to comply with her orders regarding inappropriate and abusive comments, ECF No. 173 at 1; *see also* ECF Nos. 170, 171, and in late June 2023, filed a Report & Recommendation ("R&R") recommending that the undersigned impose a filing injunction on Plaintiff. The magistrate judge noted Plaintiff's history of repetitive, vexatious, and frivolous filings, which often included "intemperate language." ECF No. 198 at 3. The magistrate judge summarized Plaintiff's more recent filings and concluded that they showed Plaintiff's "continued refusal to accept unfavorable rulings from the Court" and refusal to desist from "wholly inappropriate and intemperate arguments." *Id.* at 6. The magistrate judge therefore recommended that Plaintiff be required to "obtain permission from the Court before making any motion or filing by submitting a copy of the proposed submission and a one-

page letter showing cause why the submission should be accepted." *Id.* at 10.  She also reiterated the warning that continued violations of court orders could result in the dismissal of the complaint. *Id.*

In the meantime, RIT had filed a motion for sanctions against Plaintiff and requested dismissal of the case, based on Plaintiff's "continued violation of [the magistrate judge's] orders directing him to refrain from" abusive and inappropriate language.  ECF No. 189 at 5.

In response to the R&R, Plaintiff filed a 245-page submission to the undersigned requesting the magistrate judge's removal from the case.  ECF No. 200.  Plaintiff accused magistrate judge of corruption and of encouraging RIT to commit perjury.  *Id.* at 2.  In his view, the magistrate judge had "criminal tendenc[ies]," *id.* at 110, and was racist, evil, a "big disgrace to the Judicial System," and "dangerous against Humanity."  *Id.* at 3-4, 7, 122.  Plaintiff reiterated his entitlement to use his preferred language because the magistrate judge had allegedly failed to adequately police RIT and its counsel's language.  *Id.* at 5.  He again accused RIT of attempted assassination, *id.* at 7, and stated that the magistrate judge would "be [his] murderer."  *Id.* at 96.  Plaintiff called the magistrate judge "cheap" not "pure."  *Id.* at 7-8.  He lobbed the same invective towards RIT and its attorneys.  *See, e.g.*, ECF No. 200 at 98 (questioning counsel's ethics and legal skills); *id.* at 105 (stating that if counsel went "topless" he would withdraw his lawsuit).

In July 2023, the undersigned issued an order staying discovery pending resolution of the parties' motions.  ECF No. 204.  In September 2023, Plaintiff moved for sanctions against RIT's attorneys for their alleged "lies" about him.  ECF No. 208.

In his response to RIT's motion for sanctions, Plaintiff's reliance on abusive language continued, and he violated the magistrate judge's order by including in his submission the intimate photograph of T.H. without prior authorization.  ECF No. 210 at 1.  Plaintiff referred to RIT as a

terrorist organization, *id.* at 1, accused the magistrate judge of engaging in "filthy sexual misconduct" and "sexual scandals," *id.* at 2, implied that the magistrate judge a "filthy liar," "cheap," "racist," and "corrupt," *id.* at 4, 7, called opposing counsel "filthy cheap lawyers," *id.*, and opined that opposing counsel "lowered the values of women" through their arguments, *id.* at 11. Plaintiff absolved himself of any fault for his inappropriate language. He reasoned that his language resulted from his "health conditions," which were the fault of RIT; therefore, "the language [he] used is one of the damages that [RIT] has caused to [] Plaintiff." *Id.* at 13-14. Plaintiff stated he would commit suicide if he was not permitted to use the language he saw fit, *id.* at 14, and suggested he would only stop using such language if RIT, its attorneys, and the magistrate judge acted in accordance with his positions. *Id.* at 20. Plaintiff also began laying the groundwork to question the undersigned's impartiality. *See id.* at 22 (finding "suspicious" the undersigned's actions in an unrelated civil case); *id.* at 26 (noting his "very low" expectations of the undersigned). Plaintiff's subsequent submissions contain much the same rhetoric. *See, e.g.*, ECF No. 220 at 12 (accusing the magistrate judge of being a "terrorist"); *id.* at 16-18 (questioning the undersigned's impartiality); ECF No. 220-1. And Plaintiff again violated the order regarding the submission of T.H.'s intimate photographs. ECF No. 220-2.

Plaintiff also submitted his medical records. *See* ECF No. 220-4. They show that Plaintiff has a number of prescriptions and that in summer 2020, he was diagnosed with mental health conditions. Despite the fact that Plaintiff claims he is currently suffering from "severe health conditions," ECF No. 218 at 1, the evidence he presents does not illuminate his *present* condition.

Having reviewed the record, the Court agrees with RIT that Plaintiff's conduct warrants sanctions and that the only appropriate sanction is dismissal of the complaint with prejudice. Plaintiff has consistently and unabashedly conveyed his positions and arguments by means of

"offensive, abusive, and insulting language"—as the above factual summary clearly demonstrates. *Bernstein*, 740 F.3d at 863.  Over the year and a half that Plaintiff has represented himself, he has maintained a constant stream of irrelevant and insulting rhetoric despite multiple court orders, repeated warnings, and progressive sanctions.   In doing so, Plaintiff has disclaimed any responsibility for his own language and has explicitly refused to abide by any court order that does not meet his own preferences.  Because he has both acknowledged the court orders prohibiting his abusive language, and explicitly stated that he would not abide by them, the Court finds that Plaintiff's persistent and inappropriate conduct has been willful and in bad faith.  *See id.* at 862.

In reaching this conclusion, the Court has considered the potentially mitigating circumstances, including Plaintiff's *pro se* status, the fact that Plaintiff is not a native English speaker, and Plaintiff's mental and physical health conditions.   None of those circumstances mitigates Plaintiff's misconduct.

While Plaintiff is not an attorney and is not a native English speaker, he is also not an unsophisticated litigant.  Plaintiff is an intelligent individual who is sufficiently competent in the English language to have complete graduate coursework in electrical engineering in the United States.  He has had no trouble conveying his positions in this litigation or understanding court orders.  Despite his lack of legal training, he has been able to file motions, respond to RIT's arguments, submit objections, and pursue discovery.  Thus, even if the Court were to assume that Plaintiff was initially unaware of the expectations concerning appropriate behavior to opposing counsel and the court, Plaintiff was repeatedly and clearly instructed to desist with abusive and insulting language once he began representing himself.  Plaintiff repeatedly acknowledged his understanding of the magistrate judge's orders on inappropriate language, and proceeded to expressly and intentionally disregard them.  *See, e.g.*, ECF No. 170 at 4, 11.  As for Plaintiff's

health conditions, while the Court may accept Plaintiff's claim that he is suffering from several conditions, Plaintiff has failed to substantiate that there exists any link between those conditions and the kinds of abusive and inappropriate language he has chosen to employ during this litigation.

The Court has considered whether lesser sanctions may suffice and concludes that they will not. Plaintiff has stated that he is indigent, which makes monetary sanctions inappropriate. *See, e.g.*, ECF No. 129 at 1. Furthermore, the magistrate judge has already imposed several lesser sanctions on Plaintiff for his conduct, to no avail.

Finally, the Court has considered whether the appointment of counsel would be appropriate under the circumstances. In addition to the reasons stated by the magistrate judge, *see* ECF Nos. 118, 198, the Court is not convinced that appointment of counsel would remedy the issue. Even if counsel were to manage the litigation on Plaintiff's behalf, Plaintiff will need to be personally involved throughout the remainder of this litigation, including at his deposition and at any future trial. Plaintiff's abiding refusal to adhere to the court's orders on abusive language will therefore present a significant, if not insurmountable, obstacle to the efficient completion of this matter. Moreover, given the degree to which Plaintiff's relationship with his prior attorney deteriorated, the Court is skeptical that Plaintiff could maintain a working relationship with appointed counsel. There is no need to describe Plaintiff's invective towards his prior attorney for purposes of the present order; it suffices to say that it is similar in tone and content to his language towards opposing counsel and the magistrate judge.

In sum, the Court concludes that Plaintiff's constant, intentional, and bad faith use of "offensive, abusive, and insulting language" in this litigation, which he repeatedly communicated in defiance of court orders and instructions, warrants the sanction of dismissal of the complaint

with prejudice.  *Bernstein*, 740 F.3d at 863.  The Court will direct the Clerk of Court to close the case.[3]

## CONCLUSION

For the reasons stated herein, RIT's motion for sanctions (ECF No. 187) is GRANTED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to close the case.  The R&R (ECF No. 198) recommending a filing injunction is ADOPTED, insofar as Plaintiff must obtain permission from the Court before making any motion or filing.  To obtain permission, Plaintiff must submit a copy of the proposed submission and a one-page letter showing cause why the submission should be accepted.  Any filing that does not conform to these requirements will be returned to Plaintiff without being docketed.  All other pending motions are hereby DENIED AS MOOT.[4]

IT IS SO ORDERED.

Dated: January 10, 2024
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

---

[3] Although this litigation will now end—and therefore the Court does not expect many additional filings—the Court agrees with the magistrate judge's recommendation and intends to impose a filing injunction, as set forth below.

[4] While it is unnecessary to formally address Plaintiff's motion to disqualify the magistrate judge, the Court will note for the record that it finds no basis for the magistrate judge's recusal.  To the contrary, the magistrate judge's management of discovery and of the disputes that occurred in this case was fair, accommodating, and free from any appearance of impropriety.  In a similar vein, Plaintiff's motion to sanction opposing counsel lacks merit.